**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Edward Lee MAHAFFEY,
Defendant–Appellant.**

No. 94–1287.

United States Court of Appeals,
Sixth Circuit.

Argued March 3, 1995.

Decided April 25, 1995.

---

130

Glenda G. Gordon, Asst. U.S. Atty. (argued and briefed), Marquette, MI, for plaintiff-appellee.

Theodore F. Fulsher (argued and briefed), Marquette, MI, for defendant-appellant.

Before: LIVELY, RYAN, and DAUGHTREY, Circuit Judges.

LIVELY, Circuit Judge.

This is an appeal from the sentence following a guilty plea to one count of an eight count indictment. The defendant Edward Mahaffey and a friend, Linda Bressette, were charged with conspiracy to manufacture methcathinone, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1). Mahaffey was also charged with the substantive offense of possession of a "precursor chemical" with knowledge that it would be used to manufacture methcathinone, a violation of 21 U.S.C. § 841(d)(2). Mahaffey pled guilty to one of the possession counts. He argues on appeal that the district court incorrectly calculated his base offense level under the United States Sentencing Guidelines (U.S.S.G.), that the court improperly enhanced his offense level for obstruction of justice, and that the court erred in failing to grant him a downward adjustment for acceptance of responsibility.

Because we conclude that the government failed to carry its burden of establishing the amount of methcathinone attributable to Mahaffey by a preponderance of the evidence, we vacate his sentence and remand for further proceedings.

**I.**

Mahaffey is one of fifty persons in the Western District of Michigan convicted since May 1992 of crimes involving the designer drug methcathinone. Methcathinone is a powerfully addictive powdered stimulant that is simple to make from the precursor drug ephedrine. The government produced evidence at Mahaffey's sentencing hearing that between November 1991 and February 1992, six shipments of ephedrine, totalling 72,000 twenty-five milligram tablets, were sent to and received by the defendant. Mahaffey in turn delivered most of the shipments himself to Linda Bressette who, along with Dean Grimes, Mahaffey, and others, used the ephedrine to manufacture methcathinone at

various locations including Mahaffey's apartment.

After being subpoenaed, Mahaffey testified before a federal grand jury in February 1992 that he received only two packages on behalf of Linda Bressette, which he believed to be pills. He also acknowledged he knew Dean Grimes and believed Linda Bressette was procuring pills for Grimes. The defendant denied, however, that he knew Grimes was making methcathinone. On April 9, 1992, Mahaffey met with undercover DEA Agent Scott Herman and discussed his involvement with others in the making of methcathinone and his need for more ephedrine. Mahaffey gave Agent Herman a detailed five-page set of instructions for the manufacture of methcathinone.

At sentencing in March 1994, the district court held that Mahaffey's base offense level was 26. This determination was reached as follows: The court found that Mahaffey received, and thus possessed, 1.8 kilograms of ephedrine (72,000 twenty-five milligram tablets). The court then found that Mahaffey could produce a 50% yield of methcathinone from processing the ephedrine, thus, 900 grams of methcathinone was attributable to him. The base offense level for 900 grams of methcathinone is 26. U.S.S.G. § 2D1.1. (All U.S.S.G. citations are to the guidelines in effect in 1994, the year of Mahaffey's sentencing).

The government produced no testimony or affidavits in support of its argument that 900 grams of methcathinone could reasonably be produced from the amount of precursor drug charged to Mahaffey at the "laboratories" used in the processing. Rather, the Assistant United States Attorney argued that the 50% yield had been established in an earlier case, *United States v. Baker*, 852 F.Supp. 609 (W.D.Mich.1994), *aff'd, United States v. Pavlik*, 1995 WL 59227 (6th Cir. Feb. 13, 1995). Counsel for Mahaffey contended that the court must take into account the capability of the particular homemade laboratories where Mahaffey's ephedrine was processed, the recipe used, and the skills and experience of the particular "cook" who processed each batch.

The district court judge rejected the defendant's arguments and stated that he adopted "the legal conclusions and the findings" of the judge in *Baker* who found "that 50 percent is the objective yield." (Jt.App. 138). The court also increased Mahaffey's base offense level by two, concluding that his grand jury testimony constituted obstruction of justice under U.S.S.G. § 3C1.1 because of the defendant's vagueness concerning his involvement with Grimes and the amount of drugs he received. The court then denied Mahaffey a three point downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. Based on a sentencing range of 87–108 months, the court sentenced Mahaffey to 87 months' imprisonment followed by two years of supervised release.

## II.

### A.

■ The district court's factual findings that underlie the application of a provision of the guidelines are reviewed for clear error. *United States v. Garner*, 940 F.2d 172, 174 (6th Cir.1991). This clearly erroneous standard applies to a district court's determination of the quantity of drugs attributable to a defendant for sentencing purposes. *United States v. Walton*, 908 F.2d 1289, 1300–01 (6th Cir.), *cert. denied*, 498 U.S. 989, 111 S.Ct. 530, 112 L.Ed.2d 541 (1990); *United States v. Clemons*, 999 F.2d 154, 156 (6th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 704, 126 L.Ed.2d 671 (1994).

■ The government has the burden of proving by a preponderance of the evidence the amount of drugs for which a defendant is accountable. *Walton*, 908 F.2d at 1302; *Clemons*, 999 F.2d at 156. Where, as in this case, no drugs are seized, the sentencing court must approximate the quantity to be charged to a defendant. Application note 12 to U.S.S.G. § 2D1.1 states:

> Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance.

We have held that where the amount of drugs is uncertain, the sentencing court should " 'err on the side of caution' and only hold the defendant responsible for that quan-

tity of drugs for which 'the defendant is more likely than not *actually* responsible.'" *United States v. Meacham*, 27 F.3d 214, 216 (6th Cir.1994) (quoting *Walton*, 908 F.2d at 1302). A court's approximation of the amount of drugs involved in a particular case is not clearly erroneous if supported by "competent evidence in the record." *United States v. Brannon*, 7 F.3d 516, 520 (6th Cir.1993).

### B.

With these well-established principles in mind, we turn to the record in the present case. The record lacks competent evidence with respect to a crucial matter. The district court's finding that Mahaffey possessed 72,-000 ephedrine pills in six shipments is supported by competent evidence. Thus, the government carried its burden with respect to the first step in the calculation. The problem lies in the court's approach to determining the potential methcathinone yield from 72,000 ephedrine pills. The government failed to produce any evidence to establish the amount of methcathinone, as opposed to the precursor drug, attributable to Mahaffey. The government apparently convinced the court that the finding of a 50% ephedrine to methcathinone yield by the sentencing judge in *Baker* established that yield in all cases as a matter of law, at least in cases arising in the Western District of Michigan. An examination of the district court's opinion in *Baker*, and this court's unpublished opinion in the *Baker* appeal, reveals the error committed by the district court in this case.

The *Baker* court held that the government had "produced ample evidence supporting the 50% figure as a reasonable yield percentage." *Baker*, 852 F.Supp. at 612. The court then detailed the testimony of two government witnesses who had achieved yields of 27%, 65%, and 55.2% in laboratory attempts to produce methcathinone without seeking a maximum yield. One government witness, an expert chemist, testified that based on his knowledge and experience with clandestine laboratories, 50% was a reasonable yield "from a clandestine laboratory *such as those operated by the defendants.*" *Id.* (emphasis added). The *Baker* court adopted this witness' testimony as a basis for determining "the objective yield of the laboratory alone,"

and declined to consider other "subjective" factors such as the inexperience of the cook. *Id.* The reference to a laboratory "such as those operated by the defendants" reflects the *Baker* court's conclusion that the size or capability of the particular laboratory or laboratories is an appropriate factor to be considered.

This court affirmed *Baker* in an unpublished opinion. See *United States v. Pavlik*, 1995 WL 59227 (6th Cir. Feb. 13, 1995). In *Pavlik* we affirmed the sentences imposed on the three appealing *Baker* defendants after discussing in detail the expert testimony upon which the district court based its finding of a 50% yield and the inability of the defendants' expert to contradict the conclusions of the government experts. We made clear that the district court should consider the size and capacity of the drug laboratory involved. By implication, at least, we agreed with the district court that it was not necessary to consider the relative experience level of the particular cook.

### III.

 Our review of the opinions in *Baker* and *Pavlik* demonstrates the difference between *Baker* and the present case. In this case the government produced no witnesses and filed no affidavits of experts who were familiar with the size and capabilities of the laboratories involved. The ephedrine received by Mahaffey was used to produce methcathinone in a number of different "laboratories," including Linda Bressette's residence, her place of business, and Mahaffey's own apartment. If the government had presented evidence showing that the same laboratories and equipment involved in the *Baker* case were also used to convert the ephedrine received by Mahaffey, and if such evidence together with an expert witness' testimony or affidavit supported the 50% yield conclusion, we would be dealing with an entirely different record. If Mahaffey's ephedrine was not converted in exactly the same locations as those described in *Baker*, it was incumbent upon the government to prove that laboratories of comparable size and capability were

utilized if it sought to rely on the district court's finding in *Baker*.

We have never approved a finding on the quantity of drugs attributable to a defendant when the record contains no evidence concerning the manner in which a precursor was converted to a controlled substance or the details of the laboratories involved. In *United States v. Brannon*, 7 F.3d 516, 520 (6th Cir.1993), this court reviewed a district court's approximation of the amount of methamphetamine involved in a conspiracy case under note 12 to U.S.S.G. § 2D1.1. The district court made this approximation following remand after an earlier appeal. The panel on the first appeal concluded that the district court lacked sufficient basis for finding an amount of methamphetamine attributable to the defendant because there was no evidence of the specific capacity of the laboratory used to convert the precursor. *Id.* at 518. We noted that at the second sentencing following remand, the district court relied on an affidavit from a DEA chemist stating that based on the recipe used by the defendants, the laboratory involved, and the existence of precursor chemicals, the defendants were capable of producing 200 pounds of methamphetamine. *Id.* at 520. Upon review of this expanded record, the court affirmed the lower court's approximation regarding the controlled substance.

In *United States v. Moss*, 9 F.3d 543 (6th Cir.1993), the defendants objected to the amount of marijuana attributed to them. In vacating the sentence of one of the defendants, we stated that although we review a finding concerning the amount of drugs attributable to a particular defendant for clear error, the finding must have "some minimum indicium of reliability." *Id.* at 553 (quoting *United States v. Robison*, 904 F.2d 365, 371 (6th Cir.), *cert. denied*, 498 U.S. 946, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990)). Because the district court's finding that 900 grams of methcathinone was attributable to Mahaffey totally lacks an evidentiary basis in the record, that finding is clearly erroneous. While the "facts underlying Guidelines sentencing factors need not be proved beyond a reasonable doubt to satisfy due process," *United States v. Wilson*, 900 F.2d 1350, 1353 (9th Cir.1990), due process does require that the government prove these factors at least by a preponderance of the evidence. *Walton*, 908 F.2d at 1302.

## IV.

The defendant raises two other issues, which require less discussion.

### A.

Mahaffey also argues the district court erred in increasing his base offense level by two for obstruction of justice pursuant to U.S.S.G. § 3C1.1. Section 3C1.1 provides:

> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

Application note 3(b) following this guideline lists "committing, suborning, or attempting to suborn perjury" as an example of the types of conduct to which the enhancement applies.

At sentencing, the district court concluded that Mahaffey lied about material facts during his grand jury testimony at a critical time in the government's investigation of methcathinone labs in Michigan. The court apparently adopted the findings in the presentence report and the government's arguments at sentencing concerning Mahaffey's false statements. In enhancing the defendant's offense level for obstruction, the court specifically noted the defendant's vagueness concerning Dean Grimes and the number of ephedrine packages he received.

█ The lower court's findings of fact in making an obstruction of justice adjustment cannot be disturbed on review unless clearly erroneous. *United States v. Hamilton*, 929 F.2d 1126, 1130–31 (6th Cir.1991). Our examination of the record reveals that sufficient evidence existed to support the lower court's two point enhancement for obstruction of justice.

█ Mahaffey's grand jury testimony varied considerably from the testimony of Linda Bressette and other evidence in the record

concerning Mahaffey's involvement in the charged offense. First, although Mahaffey admitted receiving only two packages, the government produced six shipping labels from the ephedrine ordered by Linda Bressette which listed Mahaffey's address. Further, Linda Bressette, whose testimony the lower court found credible, testified that Mahaffey received approximately five ephedrine shipments on her behalf. She also testified that Geoff Wiitala picked up the first of five ephedrine shipments from Mahaffey although the defendant denied knowledge of Wiitala.

Linda Bressette stated that she, Dean Grimes, and the defendant had an agreement to convert the later ephedrine shipments into methcathinone. She further testified that just two days before his grand jury testimony, Mahaffey's apartment was used to manufacture methcathinone. Mahaffey denied ever being present during the manufacture of methcathinone. Linda Bressette also stated that she was present several times prior to Mahaffey's grand jury testimony when Dean Grimes and the defendant discussed methcathinone. The defendant denied knowledge as to whether Grimes made methcathinone. Moreover, even after his grand jury testimony, Mahaffey gave an undercover DEA agent a "recipe" for making methcathinone. This evidence supports the lower court's conclusion that Mahaffey made materially false statements during his grand jury testimony. These perjurious attempts to influence the proceedings warranted a two point enhancement to his base offense level for obstruction of justice.

### B.

■■■■ Finally, the defendant contends that the sentencing court erred in denying him a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. Because the district court's determination was factual, it can be disturbed only if we find clear error. *United States v. Milligan,* 17 F.3d 177, 185 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 211, 130 L.Ed.2d 140 (1994); *United States v. Hill,* 973 F.2d 459, 462 (6th Cir.1992), *cert. denied,* —— U.S.

——, 113 S.Ct. 1056, 122 L.Ed.2d 362 (1993). Section 3E1.1(a) states:

> If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

There is an extra one point deduction if the defendant timely provides complete information regarding his own involvement in the offense or timely enters a plea. U.S.S.G. § 3E1.1(b)(1) & (2).

■■■■ First, it should be noted that the defendant has the burden of demonstrating that a downward adjustment in his offense level is warranted under § 3E1.1. *Meacham,* 27 F.3d at 217–18. Further, a guilty plea does not entitle a defendant to a sentence reduction as a matter of right. *Hill,* 973 F.2d at 462; *United States v. Christoph,* 904 F.2d 1036, 1040 (6th Cir.1990), *cert. denied,* 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991).

■■■■ Under the Sentencing Guidelines, "[a] defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection." U.S.S.G. § 3E1.1, comment, n. 1(a). The guidelines further provide, however, "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." *Id.* That was the case here. Mahaffey did not choose to remain silent with respect to relevant conduct concerning the charged offense.

In denying the downward adjustment, the district court concluded that during his grand jury testimony, the defendant frivolously contested relevant conduct concerning the scope of his involvement in the plan to manufacture methcathinone. When the evidence demonstrated Mahaffey accepted six ephedrine shipments after he claimed acceptance of only two, the lower court correctly concluded the defendant falsely denied and frivolously contested relevant conduct. The fact that Mahaffey reserved the right in his plea agreement to contest the amount of ephedrine he received is not sufficient in itself to overcome the fact that this contention was

 

frivolous. In addition, as previously noted, in attempting to avoid responsibility for his actions, Mahaffey made numerous false statements concerning relevant conduct during his grand jury testimony. The lower court also considered the fact that Mahaffey, even after his grand jury testimony, met with an undercover DEA agent and gave the agent a "recipe" for making methcathinone.

Further, as the sentencing court noted, Mahaffey's obstruction of justice enhancement is inconsistent with acceptance of responsibility. Application note 4 to § 3E1.1 states:

> Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply.

The evidence in the record clearly establishes that Mahaffey obstructed justice by making false statements during his grand jury testimony. Because he has failed to demonstrate that this is an "extraordinary" case, his obstruction enhancement supports the district court's denial of an acceptance of responsibility reduction.

Mahaffey cites *United States v. Perez–Franco*, 873 F.2d 455, 458–59 (1st Cir.1989), for the proposition that he is only required to accept responsibility for the count to which he pled guilty. This argument does not help the defendant. First, the district court's refusal to grant a reduction for acceptance of responsibility was not predicated on Mahaffey's confession to crimes other than the one to which he pled guilty. The relevant conduct at issue pertained to the offense charged. Second, in *United States v. Clemons*, 999 F.2d 154, 158–61 (6th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 704, 126 L.Ed.2d 671 (1994), this court rejected the *Perez–Franco* line of authority and noted other circuits doing the same.

### CONCLUSION

The sentence imposed on Mahaffey is vacated insofar as it adopted a base offense level of 26 without requiring the government to show by competent evidence that 900 grams of methcathinone should be attributed to Mahaffey on the basis of an assumed yield of 50% from the ephedrine possessed by the defendant. The district court's findings with respect to the obstruction of justice enhancement and the claim of a downward departure for acceptance of responsibility are not clearly erroneous, and those rulings are **AFFIRMED**. The case is **REMANDED** to the district court for resentencing.