64 F.3d 664
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff - Appellee,
v.
Todd Bryan LAMERE, Francis Ray Ogea, and Roy Kenneth Miller.
Defendants - Appellants.
 Nos. 94-1131, 94-1573, 94-1670.
 United States Court of Appeals, Sixth Circuit.
 Aug. 16, 1995.
 
 Before: KEITH and BATCHELDER, Circuit Judges, and ROSEN, District Judge.*
 PER CURIAM:
 
 
 1
 Defendants-Appellants appeal from their convictions and sentences for conspiracy to manufacture and distribute Methcathinone, in violation of 21 U.S.C. Sec. 846. For the reasons stated below, we AFFIRM.
 
 I. STATEMENT OF THE CASE
 
 2
 On July 15, 1993, a thirty-six count Indictment was returned against Defendant-Appellants, Francis Ray Ogea ("Ogea"), Todd Bryan Lamere ("Lamere") and Roy Kenneth Miller ("Miller"), charging them with conspiracy to manufacture Methcathinone (Count One) and with conspiracy to distribute Methcathinone (Count Thirty-Six) from the fall of 1991 to May 8, 1993, in violation of 21 U.S.C. Sec. 846. The Indictment further charged Ogea with fourteen counts of possession of listed chemicals (Ephedrine, Toluene or Acetone) with intent to manufacture Methcathinone, in violation of 21 U.S. C. Sec. 841(d)(1) and 18 U.S.C. Sec. 2, and named Miller in five counts that charged him with possession of listed chemicals (Ephedrine, Toluene or Acetone), knowing or having reasonable cause to believe that the chemicals would be used to manufacture Methcathinone, in violation of 21 U.S.C. Sec. 841(d)(2) and 18 U.S.C. Sec. 2.
 
 
 3
 On September 7, 1993, Lamere entered a guilty plea to Count One (conspiracy to manufacture Methcathinone), pursuant to a written plea agreement. On January 31, 1994, the trial court consolidated Lamere's case with United States v. Andrew Pavlik, et al. for the limited purpose of hearing issues that Lamere and defendants in the other case had raised concerning the computation of sentences in Methcathinone cases. After ruling upon the issues common to the five defendants, the trial court held an individual sentencing hearing for Lamere and sentenced him to a term of sixty-six months imprisonment and three years supervised release.
 
 
 4
 Ogea and Miller opted for a jury trial, which commenced on February 1, 1994. At the conclusion of the government's case, the trial court granted the government's motion to dismiss Counts Twenty-One and Thirty, both of which named only Ogea. After a five day trial, the remainder of the case was submitted to the jury on February 8, 1994. The following day the jury found Ogea guilty on eleven counts (Counts One, Seven, Eight, Nine, Twelve, Fourteen, Seventeen, Thirty-Two through Thirty-Four and Thirty-Six), and not guilty of three counts (Counts Six, Twenty-Six and Thirty-Five), and found Miller guilty of all seven counts pending against him (Counts One, Twenty-Five through Twenty-Eight, Thirty-One and Thirty-Six).
 
 
 5
 Ogea filed a sentencing memorandum seeking incorporation of the Pavlik hearing into the record by reference. Miller moved to adopt the sentencing memorandum of Ogea. On May 10, 1994, Miller was sentenced to 216 months incarceration to be followed by three years supervised release, and Ogea was sentenced to 192 months incarceration, three years supervised release and a $4,000 fine. All three defendants filed notices of appeal.
 
 II. STATEMENT OF FACTS
 
 6
 At trial it was determined Ogea was involved in the manufacture of Methcathinone from the fall of 1991, until May of 1993. He manufactured Methcathinone with others in a number of locations including a garage, a basement, a camper, a camp, and a house. Ogea used others to procure the chemicals needed to manufacture Methcathinone. He also placed orders himself, for precursors and chemicals, using fictitious names in order to avoid detection. Ogea used some innocent unwitting people to procure precursor drugs. Ogea also procured precursors and chemicals from Lamere and Miller, who were both fully aware of the nature of the activities to render them guilty of conspiring with Ogea. Ogea paid many of his co-conspirators with Methcathinone in exchange for procuring the precursor drugs and chemicals.
 
 
 7
 In late 1992 or early 1993, Miller joined Ogea's manufacturing operation. Miller sold and gave the drug to others, including Debra Raisinen, an intravenous drug user. In addition to selling Raisinen the drug, Miller would often assist her by inserting the needle into her veins and injecting the drug for her. The evidence showed that he did this on a regular basis.
 
 
 8
 Between March 1992 and February 1993, Ogea obtained 386,000 Ephedrine pills (from which 4.825 kilograms of Methcathinone could have been manufactured) through nine different individuals. These individuals ordered the pills through the mail for Ogea and/or his associates. Ogea similarly used intermediaries to procure other chemicals, such as Acetone, Toluene and Sodium Dichromate, needed for the manufacture of Methcathinone.
 
 
 9
 In February 1993, law enforcement authorities searched Lamere's and Miller's houses and arrested them several weeks later. Thereafter, Ogea purchased the necessary chemicals on his own from local hardware stores.
 
 III. DISCUSSION
 A. Lamere's Role in the Offense
 
 10
 Lamere argues the district court erred by adjusting his offense level upward by three levels pursuant to U.S.S.G. Sec. 3B1.1, for his role as a manager or supervisor in the criminal enterprise. The Defendant acknowledges that the determination of the district court in this area is fact specific and is therefore reviewed for clear error. See United States v. Okayfor, 996 F.2d 116, 122 (6th Cir.), cert. denied, 114 S.Ct. 238 (1993). The evidence presented at trial supports the trial court's determination that Lamere, although not the leader, played a role in the conspiracy sufficient to cast him as a manager or supervisor. Lamere has failed to demonstrate any error on the part of the district court with respect to this issue.
 
 
 11
 Lamere next argues he should have been given a downward departure as a minor or minimal participant under U.S.S.G. Sec. 3B1.2. This issue is raised for the first time on appeal. Failure to present a Guidelines issue to the district court precludes this court from entertaining argument concerning alleged misapplication of the Guidelines. United States v. Nagi, 947 F.2d 211, 213 (6th Cir. 1991), cert. denied, 112 S.Ct. 2309 (1992). This issue is, therefore, waived.
 
 
 12
 B. Sentences Based on Yield of Clandestine Laboratory
 
 
 13
 Defendants Lamere, Miller and Ogea contend the district court erred in its determination of the quantity of Methcathinone attributable to each defendant for the purpose of determining the Defendants' respective base offense levels and corresponding sentences. This court reviews for clear error a district court's factual findings with respect to drug quantities. United States v. Moss, 9 F.3d 543, 552 (6th Cir. 1993). The government must establish the quantity of drugs by a preponderance of the evidence. Id.
 
 
 14
 On January 31, 1994, the district court held a sentencing hearing in connection with the sentencing of Lamere. At that hearing the government presented the expert testimony of two chemists, Mr. DalCason and Ms. Bell, each of whom conducted tests to determine the yield of Methcathinone relative to the amount of precursor drug, Ephedrine, used by the defendants. The expert chemists used the formula developed by Parke-Davis for the manufacture of Methcathinone, which was the exact formula used by the defendants. Parke-Davis touted an expected yield of approximately 85%, meaning trained chemists in a professionally controlled environment could expect to manufacture 85 grams of Methcathinone for every 100 grams of Ephedrine used in the manufacturing process.
 
 
 15
 Mr. DalCason conducted two experiments and was able to achieve yields of 65% and 27% respectively. Ms. Bell conducted only one experiment and achieved a yield of 55.2%. Mr. DalCason further testified in his expert opinion it was not unreasonable to expect a 50% yield from clandestine laboratories of the type used in this case. The defendants submitted testimony from their expert, Dr. Sandel. Dr. Sandel was unable to offer an opinion as to what the expected yield should be from a clandestine laboratory. He did, however, suggest that other factors should be taken into consideration, such as the experience level of the "cook."
 
 
 16
 Based on the foregoing testimony, the district court determined that a 50% yield was the appropriate factor to use in determining the defendant's base offense level. In reaching its conclusion the district court interpreted U.S.S.G. Sec. 2D1.1, Application Note 12[1]. The defendants now argue the court should have taken into account the relative experience level of the "cook" in reaching its conclusion and arriving at a base offense level for each defendant.
 
 
 17
 In a recent decision this court determined that the government must prove by a preponderance of evidence the amount of Methcathinone attributable to each defendant. United States v. Mahaffey, 53 F.3d 128, 132-33 (6th Cir. 1995). It is not enough to simply present evidence of a certain quantity of precursor drug and estimate the amount of Methcathinone based on a predetermined formula. Id. There must be some evidence of the type of lab used to produce the Methcathinone in order to determine the appropriate yield.
 
 
 18
 Mahaffey is not applicable to the instant case, however, because each of the defendants is bound to follow the findings of the district court. Lamere is bound by the law of the case in United States v. Pavlik, 1995 WL 59227 (6th Cir. Feb. 13, 1995), which upheld the formula used by the district court in determining the sentence of Lamere and others. Although the government did not produce evidence as to the applicable yield of the clandestine laboratories used by Ogea and Miller, Ogea's May 6, 1994, Sentencing Memorandum asked that the substance of the January 13, 1994 hearing be incorporated in his Memorandum. Specifically, Ogea stated "An evidentiary hearing was held on the issue of yield in this and related cases on January 13, 1994 .... Defendant submits that the substance of the hearing should be incorporated into this matter by reference to avoid duplication of effort, increased costs, and unnecessary repetition ..." (emphasis added). Defendant Miller then moved to adopt Ogea's "Motion Re: Calculation of Yield." Having thus acknowledged that the January 13 hearing determined the yield in their own case, Ogea and Miller, like LaMere, are bound by the findings of the district court in that proceeding. Thus, the district court did not err in determining their base offense levels based on a 50% yield of the clandestine laboratory.
 
 C. Motion to Sever
 
 19
 Miller argues the district court erred by failing to grant his pre-trial motion to sever his trial from Ogea's. In support of his argument, Miller pointed out that his role in the conspiracy was of a much shorter duration than that of his co-defendant Ogea, and the cumulative weight of the evidence offered as to Ogea would unfairly prejudice his chances of acquittal.
 
 
 20
 Generally, jointly indicted co-conspirators should be tried together. United States v. Davis, 809 F.2d 1194, 1207 (6th Cir.) cert. denied, 483 U.S. 1007 (1987). The defendant bears the heavy burden of showing that absent severance he will be faced with compelling prejudice. United States v. Weiner, 988 F.2d 629, 634 (6th Cir.), cert. denied, 114 S.Ct. 142 (1993). The trial court's refusal to grant a motion to sever is reviewed for an abuse of discretion. United States v. Barrett, 933 F.2d 355, 361-62 (6th Cir. 1991).
 
 
 21
 After reviewing the record and considering the argument of counsel, we are satisfied that the defendant has not shown that the district court abused its discretion by denying the motion to sever.
 
 D. Methcathinone: Schedule I Drug Hearing
 
 22
 Ogea argues the district court erred by failing to grant his request for a hearing on the temporary scheduling of Methcathinone as a Schedule I drug. On May 1, 1992, Methcathinone was placed on Schedule I on a temporary basis, pursuant to an expedited procedure as set forth in 21 U.S.C. Sec. 811(h).
 
 
 23
 Prior to his trial, Ogea requested a hearing to determine if the government met the statutory requirements to schedule Methcathinone. Specifically, he alleges there was insufficient evidence to warrant a finding that the temporary scheduling of Methcathinone was necessary to avoid an "imminent hazard to the public safety."
 
 
 24
 The government opposed Ogea's motion, correctly noting the temporary placement of a drug on Schedule I pursuant to Sec. 811(h) is not subject to judicial review.[2] See 21 U.S.C. Sec. 811(h)(6). Statutes which preclude judicial review of agency decisions are constitutional. See United States v. Bozarov, 974 F.2d 1037 (9th Cir. 1992), cert. denied, 113 S.Ct. 1273 (1993). Even if Ogea were entitled to a hearing, any error was harmless. There is ample evidence in the record to support the Attorney General's determination that Methcathinone posed an "imminent hazard to the public safety."
 
 
 25
 E. Admissibility of Psychological Testimony
 
 
 26
 Ogea's final contention of error is that the court improperly prohibited him from calling a psychologist to testify. Ogea argues the psychologist would have testified as to Ogea's inability to lead because of his passive/aggressive personality disorder with prominent avoidant personality traits and schizoid disorder. This testimony was properly excluded by the district court because it is not relevant to the crime charged. Ogea was not charged with being a leader, he was charged with conspiracy to manufacture and distribute Methcathinone. This testimony may have been relevant in a sentencing proceeding. There was no error by the district court in excluding this testimony from the trial.
 
 IV. CONCLUSION
 
 27
 For the foregoing reasons the convictions and sentences of Todd Bryan Lamere, Francis Ray Ogea, and Roy Kenneth Miller are AFFIRMED.
 
 
 
 *
 The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 USSG Sec.2D1.1, Application Note 12 states in pertinent part:
 Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. In making this determination the court may consider ... the size or capability of any laboratory involved.
 
 
 [2]
 The Supreme Court has held, in Touby v. United States, 500 U.S. 160 (1991), that the statutory non-reviewability of a temporary listing of a substance on Schedule I does not preclude judicial review when the temporary listing is challenged as a defense to prosecution. Id. at 168. Nothing in that case, however, can be read to entitle a defendant in a criminal case to a separate hearing on his challenge to the temporary placement of a substance on Schedule I. Neither does Touby imply that in the context of a defense to prosecution, judicial review of a temporary placement must be the equivalent of the judicial review of the permanent listing of a substance on the controlled substances schedules provided by 21 U.S.C. Sec. 877
 In any event, the defendants do not challenge the fact that prior to its temporary placement on Schedule I, methcathinone was an analogue of methamphetamine. See 21 U.S.C. Sec. 802(32). An analogue of a controlled substance, when intended for human consumption, is required to be treated as a Schedule I substance. See 21 U.S.C. Sec. 813. The government was required to prove and did prove at trial the pharmacological analogies between the two substances, as well as the defendants' intent to distribute methcathinone for human consumption. Therefore, until the temporary listing of methcathinone as a controlled substance, methcathinone was an analogue. After the temporary listing, if that temporary listing was valid, methcathinone was a controlled substance. If that listing was not valid, the substance was still an analogue. See United States v. Desurra, 865 F.2d 651, 653 (5th Cir. 1989) (holding that defects in the procedures which resulted in the invalidity of the listing of the substance as a controlled substance did not mean the substance was not an analogue); United States v. Raymer, 941 F.2d 1031, 1045-46 (10th Cir. 1991) (pointing out that defendants cannot have it both ways -- if the analogue is subsequently scheduled, then either the scheduling is valid, in which case the substance is a controlled substance, or the scheduling is invalid, in which case the substance is an analogue).