UNITED STATES of America,
Plaintiff–Appellee,

v.

Moncedrus ROBERTSON, Cornelius
Treon Johnson, Lakisha Murphy
Defendants–Appellants.

Nos. 00–6147, 00–6219, 00–6222.

United States Court of Appeals,
Sixth Circuit.

July 17, 2002.

934

Before BATCHELDER and CLAY, Circuit Judges; and CARR, District Judge.*

## OPINION

CARR, District Judge.

Defendant-appellant Moncedrus Robertson ("Robertson") appeals his conviction on May 19, 2000, and final judgment of August 17, 2000, finding him guilty of conspiracy to distribute cocaine and cocaine base. Defendant-appellant Cornelius Treon Johnson ("Johnson") appeals his conviction on May 24, 2000, and final judgment of August 18, 2000, finding him guilty of conspiracy to distribute cocaine and cocaine base. Defendant-appellant Lakisha Murphy ("Murphy") appeals the sentence of May 23, 2000, for conspiracy to distribute cocaine and cocaine base. For the following reasons, we AFFIRM the convictions and sentences of Robertson and Johnson, and we VACATE Murphy's sentence and REMAND to the district court.

## BACKGROUND

On January 16, 2000, police officers executed a drug search warrant for 255 Lind-

---

* The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

sey Street in Jackson, Tennessee, the residence of Cedric Robertson.[1] J.A. at 171–72. While searching the location, the officers found a large amount of cocaine powder in a kitchen trash can and a bag of cocaine base in a utility shed behind the residence. *Id.* at 179–80. The cocaine weighed 239.6 grams and the cocaine base weighed 127.5 grams. *Id.* at 217. The officers also found two sets of digital drug scales and $1,125 in cash in a vehicle parked at the location. *Id.* at 182–83, 187–88, 192–94. The officers seized caps, t-shirts, and a sweatshirt with the letters "HCL"[2] on them. *Id.* at 318–20.

Defendants-appellants were indicted on February 14, 2000, for conspiracy to distribute cocaine and cocaine base. *Id.* at 61–62. Robertson was tried on May 17, 2000, and the jury returned a guilty verdict on May 19, 2000. *Id.* at 147, 148. On August 15, 2000, the district court held a sentencing hearing and sentenced Robertson to 240 months imprisonment. *Id.* at 153.

Johnson was tried on May 24, 2000, and the jury returned a guilty verdict on May 26, 2000. *Id.* at 150–52. On August, 17, 2000, the district court held a sentencing hearing and sentenced Johnson to 151 months imprisonment. *Id.* at 154.

Murphy entered a guilty plea on May 23, 2000. *Id.* at 149. On August 22, 2000, the district court held a sentencing hearing and sentenced her to 120 months imprisonment. *Id.* at 159.

## DISCUSSION

### I. Moncedrus Robertson

Robertson makes two arguments: 1) his prior two felony convictions should have been consolidated for sentencing purposes; and 2) there was insufficient evidence to support a guilty verdict for conspiracy to distribute cocaine and cocaine base.

### A. Effect of Prior Convictions

In determining the defendant's criminal history, this court reviews a district court's factual finding that a defendant's prior convictions had not been consolidated for sentencing under a clearly erroneous standard. *United States v. Odom,* 199 F.3d 321, 323 (6th Cir.1999) (citing *United States v. McAdams,* 25 F.3d 370, 374 (6th Cir.1994)). "[W]e accord the district court 'due deference' [when] we ... review[ ] not just factual findings but the district court's application of these findings to the guidelines." *Id.* (citing 18 U.S.C. § 3742(e)).

A defendant is a career offender, and therefore subject to higher sentencing, if: "(1) he or she was at least 18 years old at the time of the instant offense, (2) the instant offense is a felony that is either a crime of violence or one involving a controlled substance, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." *United States v. Coleman,* 964 F.2d 564, 565–66 (6th Cir.1992) (citing UNITED STATES SENTENCING GUIDELINES MANUAL § 4B1.1) (footnote omitted). A court must treat prior convictions in related cases as one conviction when determining whether a defendant is a career offender. *Id.* (citing UNITED STATES SENTENCING GUIDELINES MANUAL § 4B1.2, cmt.; UNITED STATES SENTENCING GUIDELINES MANUAL § 4A1.2(2)). Related cases include cases that: "(1) occurred on a single

---

1. During Robertson's trial, a witness testified that Cedric Robertson was a quadriplegic, and because he could not use his hands and legs, he used others to sell drugs for him. J.A. at 224, 255.

2. A witness testified "HCL" was an acronym for "Hoover Crip Love." J.A. at 318.

occasion, (2) were part of a single common plan or scheme, or (3) were consolidated for sentencing." *Id.* (citing UNITED STATES SENTENCING GUIDELINES MANUAL § 4A1.2, cmt.).

Robertson had two prior felony convictions in a state criminal court. The district court determined that these two prior convictions had not been consolidated for sentencing, thereby increasing Robertson's criminal history points to eight instead of six and ultimately increasing Robertson's sentencing range. Robertson contends the district court erred in finding the sentences had not been consolidated because the two prior felony cases were combined for sentencing by the state criminal court.

The government contends that the district court did not err in finding Robertson's prior convictions had not been consolidated for sentencing because "the only thing that Robertson's prior felony convictions had in common was that the sentences were [sic] run concurrent with one another and he was sentenced for them on the same day." Consol. Final Br. for the United States at 32.

Some of the factors that may indicate two cases were related or consolidated for sentencing include: 1) announcement of final judgment in both cases on the same day; 2) an express or implicit order by the trial court consolidating the cases; 3) combined criminal complaints and indictments; 4) the same case numbers; 5) the same victims; 6) a single common plan or scheme; and 7) a short time period in which the crimes were committed. *Coleman,* 964 F.2d at 566; *Odom,* 199 F.3d at 324.

Robertson's only bases for arguing the prior felony cases were consolidated are the facts that he was sentenced for both at the same time and the sentences ran concurrently.

These factors alone, however, do not mean the cases were consolidated. As the district court correctly noted, "[W]e had two separate victims on two separate dates on two separate crimes. The only thing they had in common was that they got sentenced on the same day and that the two sentences were to run concurrently with each other." J.A. at 453. There was no state court consolidation order and the two crimes had different indictments. *Id.* at 548–52. The district court properly held that Robertson's prior felony sentences had not been consolidated for sentencing.

### B.  Sufficiency of the Evidence

In reviewing a sufficiency of the evidence claim, this court must determine whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Jones,* 102 F.3d 804, 807 (6th Cir.1996). This court gives the government the benefit of all reasonable inferences and will not weigh independently the evidence. *United States v. McGahee,* 257 F.3d 520, 526 (6th Cir.2001) (citing *United States v. Welch,* 97 F.3d 142, 148 (6th Cir.1996)). More than a scintilla of evidence is necessary, but circumstantial evidence alone can be the basis for the verdict. *Id.* (citing *United States v. Sherlin,* 67 F.3d 1208, 1214 (6th Cir.1995); *United States v. Ellzey,* 874 F.2d 324, 328 (6th Cir.1989)).

Robertson contends there was insufficient evidence to support a guilty jury verdict for conspiracy.

As stated, police officers executed a drug search warrant at 255 Lindsey Street and Robertson was present during the search. J.A. at 171–72, 216. The officers found 239.6 grams of cocaine, 127.5 grams of cocaine base, and other items associated

with distribution of drugs. *Id.* at 179–80, 217, 182–83, 187–88, 192–94. Codefendants, additionally, testified that they and Robertson were members of the Crips and would sell crack cocaine from Cedric Robertson's residence at 255 Lindsey Street. *Id.* at 223, 225, 255, 258, 266–68.

Codefendants also testified that they witnessed Robertson sell crack cocaine for Cedric Robertson several times. *Id.* at 231–33, 269, 271–73, 279–80. Codefendants further testified that the Crips would collect dues from members and use the dues to buy drugs for redistribution. *Id.* at 225–26, 229–31, 239, 258–59, 265–66, 269, 277.

■ Viewing this evidence in the light most favorable to the prosecution, the evidence was sufficient for a rational trier of fact to find the essential elements of conspiracy beyond a reasonable doubt.

## II.   Cornelius Johnson

Johnson raises two arguments: 1) the government presented insufficient evidence to support the verdict; and 2) the crack cocaine found in the shed behind 255 Lindsey Street should not have been attributed to him as relevant conduct.[3]

### A.   Sufficiency of the Evidence

Because Johnson failed to move for dismissal under Fed.R.Crim.P. 29 during or after trial, he did not preserve a typical sufficiency challenge and must meet a higher standard. *United States v. Swidan*, 888 F.2d 1076, 1080 (6th Cir.1989) ("However, the standard of review is different where the defendant fails to preserve his right to challenge the sufficiency of the evidence."). "Absent a manifest miscarriage of justice, we are unable to review the district court's denial of a Rule 29 Motion where the defendant did not renew that Motion at the close of *all* the evidence." *United States v. Faymore*, 736 F.2d 328, 334 (6th Cir.), *cert. denied*, 469 U.S. 868, 105 S.Ct. 213, 83 L.Ed.2d 143 (1984) (emphasis in original). The manifest miscarriage of justice standard applies when a defendant does not make a Rule 29 motion at any time. *Id.*

Johnson contends, "[T]here was absolutely no activity by the Defendant, Cornelius Treon Johnson, other than sitting in the house at the time the search warrant was executed and having had a history of purchasing drugs from Cedric Robertson." Final Br. of Appellant, Cornelius Treon Johnson at 19. Johnson argues his presence during the search and membership in the Crips provide insufficient evidence to support a guilty verdict for conspiracy.

The government argues Johnson cannot meet the "manifest miscarriage of justice" standard of review.

The evidence presented at Johnson's trial showed the police officers executed a search warrant for 255 Lindsey Street and recovered cocaine and cocaine base among other distribution items. J.A. at 294, 304, 306, 310–11. The evidence also showed the Crips members paid dues, and those dues were used to purchase cocaine for redistribution. *Id.* at 364, 385–87, 403–04. Johnson's statement to the police showed that he was at the residence and saw drugs sold previous times. *Id.* at 422–25. His statement also showed that he obtained crack from Cedric Robertson for resale. *Id.* at 422–25.

A codefendant testified that he saw Johnson sell crack cocaine several times

---

**3.**   Although not entirely clear from Johnson's brief, Johnson appears to argue both that the drugs cannot be attributed to him as relevant conduct and he was a minimal participant.

The district court, however, considered Johnson's minimal participation argument at sentencing and reduced his offense level by two levels. J.A. at 460–61.

before June 1998, and he had "fronted" crack cocaine to Johnson for resale. *Id.* at 364–72, 374–75, 378. Another witness testified that he saw Johnson buy drugs from Cedric Robertson and assumed Johnson sold the drugs. *Id.* at 386–87. Another witness testified that Johnson admitted to him that Johnson obtained drugs from Cedric Robertson. *Id.* at 395–96. Another witness testified that he saw Johnson buy drugs from Cedric Robertson and believed Johnson sold the drugs. *Id.* at 403–04.

■ The evidence demonstrates that Johnson purchased drugs from Cedric Robertson for resale. No manifest miscarriage of justice occurred through Johnson's conviction for conspiracy.

### B. Relevant Conduct

This court reviews a district court's calculation of the quantity of drugs attributable to a defendant for clear error. *United States v. Ukomadu*, 236 F.3d 333, 341 (6th Cir.2001) (citing *United States v. Mahaffey*, 53 F.3d 128, 131 (6th Cir.1995)).

The district court found that, while Johnson was a minimal participant, all of the recovered drugs were attributable to Johnson.

Johnson contends the crack cocaine found in the shed behind 255 Lindsey Street should not have been attributed to him as relevant conduct because it was outside Johnson's knowledge and control. Final Br. of Appellant, Cornelius Treon Johnson at 20 ("The testimony at trial was clear that the crack or rock cocaine was cooked at the Robertson residence some two days prior to the search warrant execution and did not involve Mr. Johnson nor was there any proof offered at the trial that he knew that the crack cocaine existed or had been cooked."). Citing *Ukomadu*, Johnson argues that "[w]here it is shown that a Defendant does not know or reasonably foresee a particular amount involved in a conspiracy, it cannot be attributed to him." *Id.* (citation omitted)

Under the Sentencing Guidelines, "a defendant is accountable for all quantities of drugs with which he was directly involved and, in the case of joint criminal activity, all reasonably foreseeable quantities." *United States v. Ledezma*, 26 F.3d 636, 646 (6th Cir.1994) (citing UNITED STATES SENTENCING GUIDELINES MANUAL § 1B1.3, cmt. n. 2); *see also United States v. Dunlap*, 209 F.3d 472, 480 (6th Cir.2000) ("[A] convicted offender should be charged, at sentencing, with all unlawful acts committed within the scope of his offense of conviction ('relevant conduct'), including uncharged narcotics foreseeably possessed by his compatriot in furtherance of their coordinated distribution enterprise.") (citations omitted).

■ The district court did not err in finding that it was reasonably foreseeable to Johnson that the residence at 255 Lindsey Street would store large quantities of drugs. Testimony at trial established that Johnson: 1) sold drugs obtained from Cedric Robertson; and 2) knew the residence at 255 Lindsey Street was used for selling drugs. It was reasonably foreseeable to Johnson, therefore, that the crack cocaine would be stored on the premises. *See, e.g., Dunlap*, 209 F.3d at 480 (the fact that the defendant lacked "unlimited access" to the location where drugs were kept did not preclude attributing the recovered drugs to him because the defendant engaged in a distribution enterprise from that location).

### III. Lakisha Murphy

Murphy makes three arguments: 1) her juvenile adjudication of delinquency was not a prior sentence for sentencing purposes; 2) the drugs should not have been attributed to her as relevant conduct; and 3) she should have received an offense

level adjustment for being a minimal participant.[4]

A. Juvenile Adjudication of Delinquency

This court reviews a district court's classification of a juvenile court adjudication under a clearly erroneous standard because it is a factual question. *United States v. Hanley*, 906 F.2d 1116, 1120 (6th Cir.1990) (citing 18 U.S.C. § 3742(e); *United States v. Perez*, 871 F.2d 45, 47–48 (6th Cir.1989)).

The district court included a 1995 juvenile delinquency adjudication when calculating Murphy's criminal history. The Pre–Sentence Investigation Report stated that on September 27, 1995, Murphy was placed on probation and was ordered to pay restitution of $110 and to stay away from the victim. J.A. at 640. Because the district court concluded that the delinquency adjudication, which led to a disposition of probation and restitution, should be treated as a prior sentence, Murphy received one point under § 4A1.1(c) of the Sentencing Guidelines and was ineligible for a sentence reduction.

Murphy contends there is no proof that an adjudication occurred because the district court's basis for its determination was the pre-sentence investigation report, Murphy's testimony, and statements by the government. Murphy contends that the delinquency proceeding does not fall within the ambit of § 4A1.2(a)(1) of the United States Sentencing Guidelines, which provides, "The term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contende-

re, for conduct not part of the instant offense." She argues she did not participate in a guilty plea before the juvenile court. Murphy further contends that the delinquency proceeding falls within § 4A1.2(f), which states, "Diversion from the judicial process without a finding of guilt (e.g., deferred prosecution) is not counted."

The government argues the juvenile court's order shows an adjudication of delinquency. The government contends the adjudication of delinquency was not a diversion because an order of restitution and probation is a possible sentence under § 37–1–131 of the Tennessee Code.

A juvenile delinquency adjudication may be included in calculating a defendant's criminal history for sentencing purposes. *United States v. Kirby*, 893 F.2d 867, 868 (6th Cir.1990). An adjudication of delinquency, which is the equivalent procedurally of a finding of guilty in an adult criminal proceeding, necessarily must be based on a finding that the juvenile engaged in conduct that would have been a crime if committed by an adult. Tenn.Code. Ann. § 37–1–102(b)(9); *In re Winship*, 397 U.S. 358, 368, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (juvenile delinquency adjudication requires proof beyond a reasonable doubt). The Pre–Sentence Investigation Report reflected an adjudication of delinquency. The Tennessee Code defines a delinquent act as

an act designated a crime under the law, including local ordinances of this state, or of another state if the act occurred in that state, or under federal law, and the crime is not a status offense under sub-

4. Murphy contends that her relevant conduct and minimal participation claims should be reviewed under a de novo standard. She relies on *United States v. Rasco*, 963 F.2d 132, 134 (6th Cir.1992), which states, "Because the proper interpretation of the guidelines is a issue of law, our review is de novo." Murphy's arguments do not, however, challenge interpretation of the guidelines but instead challenge the district court's factual findings and application of the guidelines to those factual findings.

division (b)(23)(A)(iii) and the crime is not a traffic offense as defined in the traffic code of the state other than failing to stop when involved in an accident pursuant to § 55–10–101, driving while under the influence of an intoxicant or drug, vehicular homicide or any other traffic offense classified as a felony.

TENN.CODE. ANN. § 37–1–102(b)(9).

A finding of delinquency under *Winship* had to be beyond a reasonable doubt. *Winship,* 397 U.S. at 368, 90 S.Ct. 1068. The record thus reflects a prior sentence under the Sentencing Guidelines of an adjudication of delinquency.

■■ There is, however, a remaining issue. The record does not demonstrate whether Murphy was represented by counsel during the delinquency adjudication. A juvenile has a right to counsel during delinquency proceedings which may result in physical detention in an institution. *In re Gault,* 387 U.S. 1, 42, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) ("[I]n respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed, the child and his parents must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child.").

Because it is unclear from the record whether Murphy was afforded her right to counsel during the delinquency proceedings, we vacate the sentence and remand this case with instructions to the district court to determine whether Murphy was afforded this element of due process during the delinquency adjudication.

### B. Relevant Conduct

This court reviews a district court's calculation of the quantity of drugs attributable to a defendant for clear error. *Unit-*

*ed States v. Ukomadu,* 236 F.3d 333, 341 (6th Cir.2001) (citing *United States v. Mahaffey,* 53 F.3d 128, 131 (6th Cir.1995)).

The district court found that all of the drugs could be attributed to Murphy for sentencing purposes.

Murphy contends the government did not meet its burden of proof with regard to attributing all of the drugs to her. Murphy argues, "Ms. Murphy refuted the statements that she had complete knowledge, and at no time in the entire sentencing hearing transcript does the government put on proof as to the total weight of controlled substances involved in the conspiracy." Final Br. of the Appellant at 12 (citation omitted). Murphy contends that under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the government had to prove relevant conduct beyond a reasonable doubt, instead of by a preponderance of the evidence.

The government contends that the preponderance of the evidence standard of proof is appropriate and the district court properly sentenced Murphy under that standard.

Murphy's argument that *Apprendi* applies is not well-taken because Murphy admitted to specific quantities of drugs during her plea hearing.

The record shows specific reference by the government to specific quantities of drugs and Murphy's unconditional plea of guilty suffices to draw the inference that the government's statement was accurate as to the quantity of drugs relating to the offense to which Murphy pleaded guilty. The following colloquy occurred during the change of plea hearing:

> Government counsel: ... Had this matter gone to trial, the government would have shown that on or about January 16, 2000, officers with the

Jackson Police Department, as well as other local and federal agencies, executed a search warrant at the residence of 255 Lindsey Street. Upon executing that search warrant, they found numerous items of drug paraphernalia, including approximately 240 grams of powder cocaine in a green trash can in the kitchen area. Also found was approximately 127 grams of cocaine base, or crack cocaine, hidden in the area behind the house. . . .

. . . . .

The Court: Ms. Murphy, you've heard what the attorney for the government had to say. Are those facts true?

The Defendant: Yes, sir.

J.A. at 289–91.

A verdict of guilty following a plea has to be deemed to be based on a finding that the factual basis has been shown beyond a reasonable doubt.

This factual scenario does not contain the circumstances the Sixth Circuit cautioned against in *United States v. Harper,* 246 F.3d 520 (6th Cir.2001). The defendant in *Harper* stipulated in a plea agreement that he was responsible for 500 kilograms of marijuana; later he argued the district court erred by failing to make a factual finding of this fact beyond a reasonable doubt. *Id.* at 529. The court determined that, because the defendant stipulated to the amount in the plea agreement, *Apprendi* did not apply. The court stated, however, that *Apprendi* would apply

if the indictment failed to charge him with conspiracy to distribute a specific quantity of drugs; if he subsequently pleaded guilty without stipulating, either in a plea or in a factual basis, to the amount of drugs for which he assumed responsibility; and if the district court had determined at sentencing, by a preponderance of the evidence, the amount of drugs attributable to Harper which subjected him to an enhanced statutory sentence.

*Id.* at 530, 120 S.Ct. 2348.

■ Under *Harper, Apprendi* and the beyond a reasonable doubt standard do not apply to Murphy's claim. Although the indictment did not charge a specific amount of drugs and the district court determined that amount by a preponderance of the evidence at sentencing, Murphy pleaded guilty and admitted the amount of drugs recovered during a plea colloquy.

Under a preponderance of the evidence standard, the district court did not err in finding the recovered drugs properly were attributed to Murphy as relevant conduct.

"[A] defendant is accountable for all quantities of drugs with which he was directly involved and, in the case of joint criminal activity, all reasonably foreseeable quantities." *United States v. Ledezma,* 26 F.3d 636, 646 (6th Cir.1994) (citing UNITED STATES SENTENCING GUIDELINES MANUAL § 1B1.3, cmt. n. 2); *see also United States v. Dunlap,* 209 F.3d 472, 480 (6th Cir.2000) ("[A] convicted offender should be charged, at sentencing, with all unlawful acts committed within the scope of his offense of conviction ('relevant conduct'), including uncharged narcotics foreseeably possessed by his compatriot in furtherance of their coordinated distribution enterprise.") (citations omitted).

Lieutenant Patrick Willis testified that Murphy admitted, in a statement following her arrest, her involvement in a drug conspiracy and that defendants made statements about her substantial involvement in

a drug conspiracy.[5] Testimony at the sentencing hearing revealed that Murphy: 1) was Cedric Robertson's primary care giver; 2) assisted Cedric Robertson in selling drugs from 255 Lindsey Street; 3) was present when drug suppliers came to 255 Lindsey Street to meet with Cedric Robertson; 4) sold drugs for Cedric Robertson; 5) took money from customers and gave it to Cedric Robertson; 6) was familiar with drug suppliers; 7) sold drugs for Cedric Robertson when they lived a different location; and 8) attempted to obtain a liquor license for a nightclub operated by the Crips.

■ Murphy knew about the drug conspiracy and participated in it. The district court did not act in clear error in finding the amount of drugs recovered by the officers was, therefore, reasonably foreseeable to Murphy.

### C. Offense Level Adjustment for Minimal Participation

This court reviews a district court's findings of fact on whether a defendant is entitled to a sentence reduction for minimal participation under a clearly erroneous standard. *United States v. Miller*, 56 F.3d 719, 720 (6th Cir.1995) (citing *United States v. DeFranco*, 30 F.3d 664, 669 (6th Cir.), *cert. denied*, 513 U.S. 942, 115 S.Ct. 349, 130 L.Ed.2d 305 (1994)). The defendant must prove the existence of mitigating factors, by a preponderance of the evidence, that would justify a sentence reduction. *Id.* (citing *United States v. White*, 985 F.2d 271, 274 (6th Cir.1993)). "An adjustment is not appropriate in the

absence of a finding that the defendant was 'substantially less culpable than the average participant' in the criminal enterprise." *Id.* (citing *United States v. Smith*, 918 F.2d 664, 669 (6th Cir.1990), *cert. denied*, 498 U.S. 1125, 111 S.Ct. 1088, 112 L.Ed.2d 1192 (1991)).

The district court found that Murphy was not a minimal participant and refused to decrease her sentence based on this argument.

Murphy contends, "In the [district court's] own words, the defendant was a victim of a 15 year old's poor decision making. The Appellant does not disagree with these findings of the [district court], but rather would argue that the [district court's] statements are tantamount to describing a mitigating factor not contemplated by the Guidelines." Final Br. of the Appellant at 14.

The government contends Murphy cannot satisfy her burden of proving her mitigating role.

■ Murphy actively participated in the drug conspiracy. *See supra* Part III.B. The district court did not err in noting, "[B]ecause [Murphy's] boyfriend was not able to do the things that drug dealers have to do, and [she] did them for him, then that doesn't make [her] a minimal participant. It makes [her] a participant." J.A. at 536. Because of Murphy's active participation in the conspiracy, she was not a minimal participant. She was not substantially less culpable than the average participant because she was Cedric Rob-

---

5.  Murphy argues Willis's statements are hearsay and unreliable. Final Br. of the Appellant at 11–12 ("It is of particular note that Lieutenant Willis testified at great length that Appellant's co-conspirators would testify to her knowledge, however, not one of said co-conspirators testified or was made available for cross examination.") (citation omitted).

Hearsay is, however, admissible in sentencing hearings. *United States v. Davis*, 170 F.3d 617, 622 (6th Cir.1999) ("Hearsay evidence is admissible in guideline sentencing hearings. Federal Rule of Evidence § 1101 states in subsection (d)(3) that the rules of evidence do not apply in sentencing proceedings.").

ertson's primary care giver, assisted Cedric Robertson in selling drugs from 255 Lindsey Street and other locations, was present when drug suppliers came to 255 Lindsey Street to meet with Cedric Robertson, took money from customers and gave it to Cedric Robertson, and was familiar with drug suppliers.

## CONCLUSION

For the foregoing reasons, we AFFIRM the convictions and sentences for Defendants–Appellants Robertson and Johnson, VACATE the sentence for Defendant–Appellant Murphy, and REMAND this matter for further proceedings consistent with this opinion.