*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0102P (6th Cir.)
File Name: 01a0102p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

DAVID HARPER (99-6485) and
JUAN GARCIA (99-6543),
*Defendants-Appellants.*

Nos. 99-6485/6543

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 99-00006—Curtis L. Collier, District Judge.

Argued (99-6485) and
Submitted (99-6543): December 1, 2000

Decided and Filed: April 6, 2001

Before: DAUGHTREY and MOORE, Circuit Judges;
CARR, District Judge.

---

**COUNSEL**

**ARGUED:** Aubrey L. Harper, HARPER, TOLLISON &
BURKE, McMinniville, Tennessee, for Appellant. Hugh B.

---

*The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

1

Ward, Jr., ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Aubrey L. Harper, HARPER, TOLLISON & BURKE, McMinniville, Tennessee, James H. Varner, Jr., ESHBAUGH, SIMPSON, VARNER & WATERS, Knoxville, Tennesee, for Appellants. Hugh B. Ward, Jr., ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee.

———————————

## OPINION

———————————

KAREN NELSON MOORE, Circuit Judge. David Harper ("Harper") and Juan Garcia ("Garcia"), co-defendants, appeal their sentences imposed by the district court following their convictions, Harper for a drug offense in violation of 21 U.S.C. § 846, Garcia for drug offenses in violation of 21 U.S.C. §§ 841(a)(1) and 846 and witness tampering in violation of 18 U.S.C. § 1512(b)(1). After they were arrested and held in custody but prior to trial, each wrote a letter urging a co-defendant to cover up evidence of their offenses. Both Harper and Garcia subsequently pleaded guilty, and their sentences were adjusted upward under United States Sentencing Guidelines ("Guidelines") § 3C1.1 for having obstructed justice. Neither was granted a downward adjustment under Guidelines § 3E1.1 for acceptance of responsibility. Harper and Garcia appeal their sentences, arguing that they both present "extraordinary" cases which merit a downward adjustment for acceptance of responsibility despite an upward adjustment for obstruction of justice. Harper's counsel also filed a letter with this court seeking to challenge, at oral argument, his sentence as unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000).[1] For the

———————————

[1]Garcia also sought, by letter to this court, to raise several issues, including an *Apprendi* argument, for our consideration subsequent to oral argument in this case. Although Garcia is represented by counsel, his counsel did not bring these issues to our attention. Because we lack the benefit of briefing or oral argument on these issues, and because they

following reasons, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

On January 15, 1999, Harper and Garcia, along with several other co-defendants, were arrested while transporting approximately 1,100 pounds of marijuana from Chattanooga to Sweetwater, Tennessee. Both defendants were initially indicted on January 20, 1999. On February 25, 1999, following an indictment on two counts of drug offenses, Harper wrote the following letter from prison to a co-defendant, Adan Rocha, asking him to deny Harper's involvement in the crime:

Adan,

How are things - I hear you plea bargained - is it true - They called me down there to the procicutor's [sic] office and wanted me to tell them on everybody - but as you know I didn't know anything about that stuff being in the freight - you know this - and I'm hoping you will go to court and be a witness for me - telling that I didn't know about the pot being there - all I want you to do is tell the truth about Vic telling me that he was going to set me up in the mexican import business - and that you called me and I came to Larado to meet with him and you and he tricked me into picking up the freight with the stuff in it -

I think everyone still has a chance to beat it, in a hearing to suppress the evidence or a hearing to dismiss the charges. You should have waited until after these hearings before you plea bargained, if in fact you did.

Write me a letter and let me know if what I hear is true; and what is really going on. Tell you [sic] lawyer to get in touch with my lawyer and let him know.

were not raised by Garcia's counsel, we decline to address Garcia's new issues in this direct appeal.

I hope and pray that you will do the right think [sic] about this because you know that you got me into all this mess.

May God bless & keep you strong.

Your friend David.

J.A. at 157-58 (Presentence Report).

On March 31, 1999, while in prison awaiting trial, Garcia authored a letter to his nephew, also an indicted co-defendant, asking him to assist in Garcia's defense:

If they ask you if you know a Villa you say no; that is all you are going to answer ok. Then you want to say that you don't know anything about what is in the truck. Only say that you have nothing to do with the matter and to let you go. Otherwise if you say that you know them, they will keep you because then you will enter into a conspiracy and then you can forget that you will leave soon. Just remember, you do not know Villa. That is all they want to know from you, they don't want to let you go. They only want to know if you know him to make you like them better, just remember you don't know him. Ok.

Tio [Uncle]

J.A. at 137 (Presentence Report). This letter did not reach its intended recipient.

Subsequent to their obstructive behavior, Harper and Garcia were charged in a second superseding indictment with four counts: (1) conspiracy to distribute and possess with intent to distribute marijuana, in violation of 21 U.S.C. § 846; (2) possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (3-4) witness tampering, in violation of 18 U.S.C. § 1512(b)(1) (one count each as to Harper and Garcia). On June 10, 1999, Harper agreed to plead guilty to count one pursuant to a plea

and Harper's argument must fail.[7] *Cf. United States v. Munoz*, 233 F.3d 410, 414 (6th Cir. 2000) (upholding defendant's sentence for conspiracy to distribute cocaine and methamphetamine despite fact that defendant only pleaded guilty to conspiracy to distribute cocaine but not methamphetamine because "sentence did not exceed the statutory maximum for the portion of the indictment to which [defendant] validly pled guilty").

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the defendants' sentences.

---

[7] Similarly, Harper's argument with respect to the obstructive conduct enhancement under § 3C1.1 of the Guidelines is unavailing. The sentencing enhancement increased Harper's base offense level from a 31 to a 33; this difference resulted in a sentencing range of between 168 to 210 months instead of a range of 135 to 168 months. Given the fact that Harper stipulated to the amount of drugs which were used to determine his statutory sentence, neither sentencing range is in excess of the applicable statutory maximum. Thus, *Apprendi* does not apply.

for a term of 168 months, or 14 years, is, therefore, not in excess of the statutory maximum.[6]

Harper's *Apprendi* argument clearly would have merit if the indictment failed to charge him with conspiracy to distribute a specific quantity of drugs; if he subsequently pleaded guilty without stipulating, either in a plea or in a factual basis, to the amount of drugs for which he assumed responsibility; and if the district court had determined at sentencing, by a preponderance of the evidence, the amount of drugs attributable to Harper which subjected him to an enhanced statutory sentence. Likewise, Harper's claim would have merit if he had been indicted for a "measurable quantity" of marijuana, convicted by a jury for conspiracy to distribute this unspecified quantity, and then sentenced by the district court under a preponderance of the evidence standard in excess of the default statutory maximum. In both instances, Harper's Fifth and Sixth Amendment rights would have been violated by the failure to give him proper notice of his crime and the failure to charge and prove all elements of the crime, either to judge or jury, beyond a reasonable doubt. *See United States v. Ramirez*, – F.3d – , 2001 WL 137939, *3 (6th Cir. Feb. 16, 2001) (holding that when quantity of drugs for 21 U.S.C. § 841(a) conviction determines statutory mandatory minimum or maximum sentence under § 841(b), jury should determine amount of drugs beyond a reasonable doubt); *United States v. Flowal*, 234 F.3d 932, 936 (6th Cir. 2000) (same).

Harper, however, stipulated to the amount of drugs for which he was held responsible, and the district court did not rely on any fact outside of the plea agreement to determine drug quantity at sentencing. Therefore, the principles articulated in *Apprendi* are not implicated by the instant case,

---

[6]If we were to consider Garcia's *Apprendi* claim, we would note that Garcia also pleaded guilty and stipulated in a factual basis accompanying his plea to responsibility for approximately 1200 pounds of marijuana. J.A. at 137. Like Harper, his claim does not, therefore, appear to implicate *Apprendi.*

agreement executed with the government.[2] In exchange for the plea, the government agreed not to oppose Harper's request for a three-level downward adjustment for acceptance of responsibility if Harper fulfilled his obligations under the agreement and the Probation Office recommended a reduction. The agreement also stated that, by pleading guilty, Harper was exposing himself to a mandatory minimum sentence of ten years to life imprisonment. As support for the plea agreement, Harper stipulated to a "factual basis" which noted the specific amount of marijuana, 1108 pounds, for which he assumed responsibility. On July 13, 1999, the morning of trial, Garcia pleaded guilty to counts one, two, and four of the indictment without the benefit of a plea agreement.

In a presentence report prepared by the probation office, Harper's total offense level was set at 33 and his criminal history category at level III. In a separate presentence report, Garcia's total offense level was calculated to be 37 and his criminal history category was set at level VI. The reports for both defendants recommended a two-level upward adjustment for obstruction of justice based on the letters sent from prison. Neither report recommended any adjustment for acceptance of responsibility, although both reports noted that "the Court may consider the timing of the obstruction and the fact that the obstructive behavior did not result in any significant problems in the case. Defense counsel may be able to convince the Court that this is an extraordinary set of circumstances where both adjustments could apply." J.A. at 138, 158.

Garcia and Harper objected to their presentence reports and argued that they deserved a downward adjustment for acceptance of responsibility because their obstructive behavior occurred early in the government's investigation, their behavior did not have any effect on the government's case, and they subsequently pleaded guilty. Garcia made the

---

[2]As part of Harper's plea agreement, the government agreed to dismiss counts two and three at the sentencing hearing.

further argument that he began to accept responsibility after his attempt to send the letter to his nephew and that his acceptance therefore encompassed "the fact of the prior obstructive behavior." J.A. at 92 (Objections to Presentence Report).

At the sentencing hearing, held on September 28, 1999, the district court rejected the defendants' objections and adopted the sentencing recommendations in the respective presentence reports. The district court judge stated that he found nothing "extraordinary" in the defendants' cases because "in most cases where there is [an] obstruction [adjustment], it's because the person has been discovered, it's been detected, and the obstructive conduct has not had a major effect upon the prosecution." J.A. at 114 (Sentencing Hr'g). Furthermore, according to the district court, "most cases result in guilty pleas, at some point after the unsuccessful obstructive conduct took place." J.A. at 114. The district court then sentenced Harper to 168 months in prison, a term of supervised release, and a special assessment of $100. After granting the government's motion for a reduction of sentence as to Garcia for substantial assistance pursuant to § 5K1.1, the district court sentenced Garcia to 300 months in prison, a term of supervised release, and a special assessment of $100.

Both defendants appeal their sentences and the district court's refusal to grant them a downward adjustment for acceptance of responsibility. Garcia claims that the district court erred because it failed to consider that his obstruction occurred early in the federal investigation; he did not repeat his efforts to contact his nephew; and he actively cooperated with the government after pleading guilty by helping to identify additional individuals involved in the drug operation. Harper contends that the district court erred because it failed to consider that he could have sufficiently accepted responsibility in the interim three-and-a-half months between the time he wrote the obstructive letter and the date he signed his plea agreement. Harper also argues that his sentence is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because neither the amount of drugs for which he was

process right to have all elements of a charged offense tried to a jury and proved beyond a reasonable doubt.

The Supreme Court agreed with Apprendi and found the New Jersey hate crime statute's enhanced penalty provision unconstitutional under the Sixth and Fourteenth Amendments. The Court concluded that the sentencing enhancement for hate crimes was an element of the offense, not a sentencing factor, and as such had to be established by more than a preponderance of the evidence. In striking down the sentencing enhancement, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 120 S. Ct. at 2362-63.

In this case, Harper stipulated that he was responsible for slightly more than 500 kilograms of marijuana and pleaded guilty, pursuant to that amount, to a count which carried a mandatory minimum sentence of ten years with a possible sentence of life imprisonment. The penalty provisions in 21 U.S.C. § 841(b) provide for a range of penalties conditioned upon, inter alia, the amount of drugs for which the defendant is held accountable and the defendant's prior felony drug convictions. According to § 841(b)(1)(B), a defendant who is held accountable for 100 kilograms or more of marijuana and has a prior felony drug conviction must be sentenced to at least 10 years and not more than life in prison. Because Harper has a prior felony drug conviction and he stipulated to responsibility for approximately 500 kilograms of marijuana, which amount he does not now dispute, he was subject to the mandatory minimum ten-year sentence.[5] Harper's sentence

---

[5]Harper does not challenge the use of his prior drug convictions as a sentencing factor. Of course, such a challenge would be unavailing. *United States v. Gatewood*, 230 F.3d 186, 192 (6th Cir. 2000) (en banc).

receiving his guilty plea without a sufficient factual basis; instead, Harper argues that the district court should have made a factual finding that he was responsible for approximately 500 kilograms of marijuana beyond a reasonable doubt.

Harper misconstrues the import of *Apprendi*. *Apprendi* involved the question whether, pursuant to the Due Process Clause of the Fourteenth Amendment, a factual determination which gives rise to a penalty in excess of the prescribed statutory maximum must be made by a jury on the basis of proof beyond a reasonable doubt, or whether a judge may make the factual determination by a preponderance of the evidence. Apprendi pleaded guilty to three counts of a state indictment, two for second-degree possession of a firearm for an unlawful purpose and one for third-degree unlawful possession of an antipersonnel bomb. *Apprendi*, 120 S. Ct. at 2352. The second-degree offenses were punishable by a sentence of between five and ten years' imprisonment. A separate statute, New Jersey's "hate crime" statute, authorized the trial judge to extend a defendant's term of imprisonment for a second-degree offense to between ten and twenty years if the judge found, by a preponderance of the evidence, that the defendant "acted with a purpose to intimidate an individual or group of individuals because of," inter alia, that individual's race. *Id.* at 2351. In the plea agreement, the state reserved the right to seek an enhanced sentence on one of the second-degree offenses pursuant to the hate crime statute; Apprendi reserved the right to contest the constitutionality of that statute's enhanced sentencing procedure.

At an evidentiary hearing held upon motion by the state, the trial court found by a preponderance of the evidence that Apprendi had unlawfully possessed a firearm with a purpose to intimidate on the basis of race, in violation of the state's hate crime statute. Thus, instead of facing a maximum ten-year sentence on a count to which he pleaded guilty, Apprendi received a twelve-year sentence pursuant to the hate crime statute's sentencing enhancement. Apprendi challenged this sentence as violative of his Fourteenth Amendment due

sentenced nor the facts establishing the obstruction of justice adjustment were proved by the government beyond a reasonable doubt.

The government counters that the district court considered the facts and properly determined that there was nothing "extraordinary" about either case such that it would merit both the upward adjustment for obstruction of justice under the Guidelines and a downward adjustment for acceptance of responsibility. The government also disputes the applicability of *Apprendi* to Harper's sentence.

## II.  ANALYSIS

### A.  Standard of review

We usually defer to a district court's factual findings regarding acceptance of responsibility and will reverse the district court only if its findings are clearly erroneous. *United States v. Tilford*, 224 F.3d 865, 867 (6th Cir. 2000); *United States v. Surratt*, 87 F.3d 814, 821 (6th Cir. 1996). When the facts are undisputed, as in this case, the question whether the district court appropriately applied the Guidelines to a particular set of facts is a question of law that we review de novo. *Tilford*, 224 F.3d at 867; *United States v. Childers*, 86 F.3d 562, 563 (6th Cir. 1996). We write today to clarify that the question whether undisputed facts constitute an "extraordinary" case that warrants an adjustment for acceptance of responsibility despite charges of obstruction of justice under § 3E1.1 of the Sentencing Guidelines is a question of law that we review de novo. The defendant has the burden to demonstrate acceptance of responsibility by a preponderance of the evidence. *Surratt*, 87 F.3d at 821.

### B.  Timing of Acceptance of Responsibility

According to the Sentencing Guidelines, a district court may grant a defendant a two-level downward adjustment to his base offense level if the defendant "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). A defendant may be eligible for an additional

one-level adjustment if the "defendant has assisted authorities in the investigation or prosecution of his own misconduct" and his offense level, prior to the application of § 3E1.1(a), was greater than level 16. U.S.S.G. § 3E1.1(b). Application note 4 to this section states that conduct resulting in an enhancement under § 3C1.1 for obstruction of justice[3] "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." U.S.S.G. § 3C1.1, comment. (n.4). We are asked to review the district court's determination that the defendants did not present an "extraordinary" case such that they deserved the downward adjustment for acceptance of responsibility despite their obstructive conduct.

Recently, in *United States v. Jeter*, 191 F.3d 637 (6th Cir. 1999), we clarified when we begin to examine the defendant's conduct for evidence that he has accepted responsibility for his offense. We noted in *Jeter* that while "district courts have discretion in determining the time period for acceptance of responsibility, we do not believe they have unbridled discretion." *Jeter*, 191 F.3d at 640. Thus, we determined that the district court could not use Jeter's "preindictment state crimes as a basis for denying him a reduction for acceptance of responsibility on the federal charges." *Id.* at 639. We held, as a matter of law, that "the defendant must be on notice that the federal government has an interest in his or her affairs before § 3E1.1 comes into play." *Id.* at 639-40. In *United*

---

[3]The district court adjusted the defendants' sentences upward for obstruction of justice pursuant to Sentencing Guideline § 3C1.1, which provides that the district court may increase the offense level by 2 levels if:

> (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense.

The applicability of this adjustment is not contested on appeal.

court that his case is extraordinary under § 3E1.1, in contrast, the defendant must cooperate as to himself, not as to others. *See* U.S.S.G. § 3E1.1(a) (permitting two level adjustment if "defendant clearly demonstrates acceptance of responsibility *for his offense*") (emphasis added); *see also* § 3E1.1(b) (permitting additional one level adjustment if "defendant has assisted authorities in the investigation or prosecution *of his own misconduct*") (emphasis added).

Neither defendant presented the district court with evidence of anything other than the fact that the attempted obstruction failed and the defendant later entered a guilty plea, Garcia's on the morning of trial.[4] Therefore, we cannot say that, as a matter of law, the district court erred by concluding that neither Harper nor Garcia was entitled to a downward adjustment for acceptance of responsibility given his obstructive conduct.

### D.  Harper's *Apprendi* Challenge

Harper's counsel asserted two additional issues at oral argument:  first, that Harper's sentence is unconstitutional pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the amount of drugs to which Harper stipulated in the factual basis supporting his guilty plea was not established by the government beyond a reasonable doubt; and second, that the government must prove Harper's conduct establishing the obstruction of justice adjustment beyond a reasonable doubt before the district court may enhance Harper's sentence.

In this case, Harper entered into a valid plea agreement, pursuant to Fed. R. Crim P. 11, with the government. He stipulated in the factual basis accompanying his plea that he was responsible for 1108 pounds, or approximately 500 kilograms, of marijuana. He does not challenge this amount on appeal nor does he argue that the district court erred by

---

[4]Garcia did then provide the government with information for further prosecutions, but his sentence reflected his assistance in that he was granted a downward departure under U.S.S.G. § 5K1.1.

responsibility. . . ." U.S.S.G. § 3E1.1, comment. (n.3). This evidence may, however, "be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." *Id.* Moreover, the note states that "a defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." *Id.* We believe it is the "extraordinary" case in which the defendant's obstructive conduct does not "outweigh[]" the defendant's acceptance of responsibility. Thus, we require something more, as a matter of law, than a guilty plea after an attempt to obstruct justice to demonstrate that the defendant's case is "extraordinary."

It is, moreover, the defendant's burden to demonstrate that his case is "extraordinary" such that he deserves the downward adjustment. This burden is not, however, insurmountable. For example, if a defendant awaiting trial escapes from custody but then immediately turns himself into authorities, this could constitute an "extraordinary" case in which a defendant accepts responsibility subsequent to an attempt to obstruct justice. Similarly, had either defendant in this case immediately confessed after writing his obstructive letter and then offered to plead guilty, this would have been extremely persuasive evidence that his case was "extraordinary" such that he merited the downward adjustment under § 3E1.1 despite his obstructive behavior.

We note that a defendant need not have evidence of other individuals' participation in criminal activity in order to establish that his case is extraordinary. Such a standard would impose too great a burden on a defendant. Should a defendant provide the government with evidence of other individuals' criminal conduct, he should, upon a motion by the government, appropriately be considered a candidate for a downward departure for substantial assistance to authorities under § 5K1.1. *See* U.S.S.G. § 5K1.1 (noting that court may depart from guidelines, upon motion by government, when defendant provides "substantial assistance in the investigation or prosecution of *another* person who has committed an offense") (emphasis added). In order to demonstrate to the

*States v. Tilford*, we refined *Jeter's* holding and concluded that, despite the fact that Tilford was alerted to IRS agents' interest in his affairs in 1993 when the agents informed him they were investigating his tax returns, the relevant time period for measuring Tilford's acceptance of responsibility began with the entry of Tilford's guilty plea on February 26, 1998, which was, importantly, the date of his indictment. *Tilford*, 224 F.3d at 868.

Conversely, in *United States v. Roberts*, – F.3d – , 2001 WL 220003, *5 (6th Cir. March 6, 2001), a panel of this court upheld a district court's upward adjustment for obstruction of justice based on a defendant's obstructive behavior which occurred *prior* to his federal indictment. In *Roberts*, the defendant was indicted in state court in January 1997 for felony rape and kidnaping. Roberts subsequently escaped from state custody where he was being held for the state offenses. He was then, on June 18, 1998, indicted by a federal grand jury for the same underlying conduct that led to his state indictment. Roberts challenged the upward adjustment of his sentence under § 3C1.1, arguing that the Guideline did not apply because the obstructive behavior did not occur "during the course of the investigation, prosecution, or sentencing of the *instant offense of conviction*." U.S.S.G. § 3C1.1 (emphasis added). Affirming the district court's adjustment of the defendant's sentence, the *Roberts* court reasoned that the defendant's obstruction as to his state charges was connected to the "instant offense of conviction" in federal court because "both sets of charges, and the obstruction activity, were related to the same underlying activity." *Roberts*, 2001 WL 220003, *5. The *Roberts* court also affirmed the district court's denial of the defendant's request for a downward adjustment for acceptance of responsibility, concluding that there was nothing extraordinary about the defendant's case. *See id.* at *6.

As *Tilford* and *Jeter* make clear, a district court may at least consider the defendant's behavior following his initial indictment in federal court for purposes of measuring whether the defendant has accepted responsibility because the

defendant is certainly "on notice that the federal government has an interest in his . . . affairs" at the time of indictment. *Jeter*, 191 F.3d at 639-40. *Roberts*, however, teaches that obstructive behavior can occur prior to the moment at which courts may consider whether the defendant's conduct conforms with his acceptance of responsibility. Thus, a district court's evaluation whether the defendant has accepted responsibility is distinct from the court's determination whether the defendant has obstructed justice.

In this case, we believe the district court properly began evaluating the defendants' conduct for purposes of the § 3E1.1 adjustment as of the time the defendants were first indicted on January 20, 1999. We reject Garcia's argument that we begin to measure acceptance of responsibility subsequent to the date of his attempted obstruction of justice. It is clear that Garcia knew of the government's interest in his criminal activity, not simply after he wrote the obstructive letter at the end of March, but, at the latest, when he was first indicted in January 1999. Therefore, the district court did not err by considering all post-indictment behavior when assessing whether to grant a downward adjustment under § 3E1.1

## C. Application of Sentencing Guidelines

At the sentencing hearing, the district court attempted to discern what was "extraordinary" about each case. When posed with the direct question, Garcia's lawyer stated that "the factual circumstances are what's extraordinary about this case." J.A. at 106 (Sentencing Hr'g). Elaborating, he explained that he believed Garcia's case was extraordinary because Garcia's obstructive conduct occurred shortly after his arrest and had no effect on the government's case. He further stated that Garcia waited to plead guilty until the morning of trial due to his inexperience with the federal court system and his shock at the number of years of imprisonment that he faced. Finally the lawyer stated: "I'm not very often faced with this kind of circumstance, so I'm not sure that I can say to the Court what is extraordinary." J.A. at 109.

Harper's lawyer stated that his client's case was extraordinary because, in the three-and-a-half months between the time Harper sent the obstructive letter and the date of his plea, he accepted responsibility. Conceding that his client had not accepted responsibility as of the time the letter was sent, Harper's counsel argued that his client sufficiently accepted responsibility after the letter was sent to merit the downward adjustment.

The government informed the district court that it did not oppose either defendant's request for a downward adjustment. When pressed on the question whether either defendant's case was extraordinary, however, the government stated, "to be honest . . . , I can't tell you what an extraordinary circumstance would be. I can tell you, to be very forthright with the Court, these are not extraordinary circumstances." J.A. at 113.

Declining to grant the defendants their proposed downward adjustment, the district court stated that, in its experience, those defendants charged with obstruction of justice had attempted and failed in their efforts at obstruction. In most of those cases, according to the district court, "after the unsuccessful obstructive conduct took place, there would be a guilty plea . . . ." J.A. at 114-15. Based on its experience, the district court concluded there was nothing extraordinary about the set of facts in either Harper or Garcia's case; indeed, according to the district court, "this is pretty typical of what you would expect to see in cases where there is an obstruction of justice adjustment." J.A. at 115-16.

We agree with the district court that it is the ordinary case in which a defendant pleads guilty after his attempts to obstruct justice are thwarted. We do not find persuasive either Harper or Garcia's argument that his guilty plea is sufficient evidence that he accepted responsibility. According to § 3E1.1's application note 3, "[e]ntry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction . . . will constitute significant evidence of acceptance of