**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Fred DOWELL, Solomon Smith,**
**Defendants–Appellants.**

**Nos. 99–1911, 00–2034.**

United States Court of Appeals,
Sixth Circuit.

July 31, 2001.

---

Before SILER and MOORE, Circuit Judges, and STAGG, District Judge.*

## OPINION

MOORE, Circuit Judge.

In March of 1997, a federal grand jury indicted Defendants–Appellants, Solomon Smith ("Smith") and Fred Dowell ("Dowell"), along with thirteen other individuals, for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. Both Smith and Dowell entered into plea agreements with the Government. After accepting the plea agreements of Smith and Dowell, the district court sentenced Smith to ninety months' imprisonment, followed by five years of supervised release, and sentenced Dowell to forty months' imprisonment, to be served concurrently with the state sentence that Dowell was already serving, and followed by five years of supervised release.

* The Honorable Tom Stagg, United States District Judge for the Western District of Louisiana, sitting by designation.

Smith and Dowell now appeal their sentences. On appeal, Smith argues that he was entitled to a sentence of no more than sixty months under his plea agreement. Dowell argues that the district court erred in not giving him credit for time he served in a state prison prior to receiving his federal sentence, that the Government failed to specify a quantity of cocaine in his indictment and failed to prove the drug quantity used for his sentencing in violation of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and that his guilty plea was not voluntary because the quantity of cocaine was not specified in his indictment.[1] For the reasons that follow, we AFFIRM the judgment of the district court.

## I. BACKGROUND

In March of 1997, a federal grand jury issued a one-count indictment against Smith and Dowell, along with thirteen other individuals, for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. The indictment did not specify the quantities of cocaine involved in the conspiracy or the quantity of cocaine handled by any particular defendants, including Smith and Dowell. Eventually, both Smith and Dowell entered into plea agreements with the Government and stipulated to being involved with specific amounts of cocaine in the worksheets that were attached to their plea agreements.

### A. Solomon Smith

In the worksheets attached to his plea agreement, Smith stipulated to his involvement with "more than 3.5 kilo[grams] but less than 5 kilograms of cocaine" in the charged drug conspiracy. Joint Appendix

("J.A.") at 55. Smith's plea agreement provided that "any sentence of incarceration [for Smith would] not exceed *121* months," that "the court [would] determine the applicable sentencing factors at sentencing and that the court's determination [would] affect the sentence range under the sentencing guidelines." J.A. at 47–48. Smith's plea agreement also contained an agreement from the Government to request a downward departure to only sixty months' imprisonment if it determined "that [Smith's] cooperation amount[ed] to substantial assistance in the investigation of others." J.A. at 51. The plea agreement further noted that "[t]he court's failure to follow such a recommendation, if made, [would not be] a valid basis for [Smith] to withdraw [his] guilty plea or to rescind the plea agreement." J.A. at 51.

On August 13, 1999, Smith appeared before the district court for sentencing. During this hearing, the district court addressed the Government's motion for a downward departure for Smith. In its motion, the Government argued:

> At the point when Solomon Smith agreed to plead guilty and testify against his codefendants, the primary person in the indictment who Smith had substantial information against was Myron Milton. Shortly after Mr. Smith made his decision known, Myron Milton decided to plead guilty. There is no way of knowing with any certainty whether Smith's cooperation played a role in Milton's decision, although the order of events would suggest this. In any event it was the decisions by Smith and Milton which substantially influenced the remaining defendants to plead

1. In his appellate brief, Dowell argued only that the district court erred in not giving him credit for time he had served in a state prison prior to receiving his federal sentence. During oral argument, however. Dowell's counsel raised two more arguments regarding the validity of Dowell's indictment and sentencing after *Apprendi* and the voluntariness of Dowell's guilty plea. The panel granted Dowell time to brief these additional arguments and also gave the Government time to respond to such arguments.

guilty, thereby avoiding a lengthy multi defendant trial.

On two occasions after the entry of his guilty plea. Smith was debriefed by Federal agents. In the course of these debriefings, defendant identified the New York source who supplied him with the cocaine with which he, in turn, sold to Myron Milton. Agents intend to use this information to further investigate this source with a view to indicting him if additional witnesses and corroboration can be developed.

J.A. at 74–75.

Despite the Government's motion, the district court refused to depart downward to a sixty-month sentence and instead sentenced Smith to ninety months' imprisonment, followed by five years of supervised release. The district court reasoned that Smith had done nothing more than what would entitle him to receive a three-level reduction for acceptance of responsibility and thus did not deserve such a substantial downward departure. According to the district court, although Smith had been debriefed several times, "there [was] nothing indicating what value that was [to] the government" because Smith had not yet testified before a grand jury. J.A. at 116.

In response, the Government attempted to explain how it valued Smith's testimony, stating:

The value is that the agents now have an opportunity if they care to pursue it, to look in this particular source [the New York source]. And as I mentioned there, do what they have to do to get the corroborating evidence to convict him.

\* \* \* \* \* \*

I can call [Smith] before the grand jury tomorrow, have him place that information on record until such time as the agent's available to obtain additional information.

As the court's aware, hopefully is aware, I'm not in the business – I don't think anyone else in our office is, basically of indicting somebody with one witness. At least in this kind of context, you need additional information, some of which is readily available, a portion of which is not.

J.A. at 116–18. Defense counsel further added that Smith had "identified leads to another case relating to the use of automobiles for transportation of drugs to and from Pennsylvania and New York." J.A. at 120. Still, the district court refused to depart downward to a sixty-month term of imprisonment, noting that the Government was recommending more than a fifty-percent reduction for Smith and that, while the district court was willing to give Smith credit for his cooperation, it could not value Smith's cooperation at such a high level, even when Smith's cooperation was viewed in its best light.

B. Fred Dowell

In the worksheets attached to his plea agreement. Dowell stipulated to his involvement with "more than 200 but less than 300 grams of cocaine" in the charged drug conspiracy. J.A. at 68. Dowell's plea agreement provided that Dowell could be sentenced to no more than a forty-month term of imprisonment. The agreement did not specify whether Dowell's sentence would run concurrent with any state sentences or whether Dowell could receive credit for any time already being served in a state facility.

On July 26, 1999, Dowell appeared before the district court for sentencing. In this sentencing hearing, defense counsel for Dowell informed the district court that Dowell was currently serving a sentence in a state facility, and the prosecutor recommended that Dowell's federal sentence be made to run concurrently with any state sentence. The district court sentenced Dowell to forty months' imprisonment, to be served concurrently with Dowell's state

sentence "commencing on the date of the federal sentencing" and to be followed by five years of supervised release. J.A. at 115.

## II. ANALYSIS

### A. Solomon Smith

■ Smith argues that he is entitled to specific performance of a sixty-month sentence pursuant to his plea agreement. We reject this argument. As this court has explained, a plea agreement is contractual in nature. *United States v. Robison,* 924 F.2d 612, 613 (6th Cir.1991); *United States v. Herrera,* 928 F.2d 769, 771–73 (6th Cir. 1991). In the majority of jurisdictions, the intent of the parties to a contract is presumed to reside in the language the parties chose to use in the agreement. JOHN D. CALAMARI & JOSEPH M. PERILLO. THE LAW OF CONTRACTS 147 (4th ed.1998).

■ In this case, the plea agreement was clear on its face and did not bar Smith from receiving a sentence of more than sixty months; it provided only that Smith's sentence should not exceed 121 months' imprisonment. J.A. at 48. The plea agreement further provided that "the court [would] determine the applicable sentencing factors at sentencing and that the court's determination [would] affect the sentence range under the sentencing guidelines" and that the district court's refusal to depart downward to a sixty-month term of imprisonment would not be grounds for rescinding or withdrawing from the plea agreement.[2] J.A. at 47. Consequently, we cannot interpret the plea agreement as requiring no more than a sixty-month sentence for Smith.

Moreover, we believe that the Government complied with the terms of Smith's plea agreement when it moved for a sentence of only sixty months upon its determination that Smith's cooperation amounted to substantial assistance.

■ Thus, the only remaining question is whether the district court erred in refusing to grant the Government's motion for downward departure in its entirety. As this court has previously recognized, however, this question is not reviewable on appeal. *See United States v. Gregory,* 932 F.2d 1167, 1169 (6th Cir.1991) (holding that this court should "not accept jurisdiction over appeals based on factors which the appellant argues should have influenced the degree of a downward departure"). Therefore, we affirm the district court's sentence of Smith.

### B. Fred Dowell

Dowell argues that the district court erred in not giving him credit for the time that he served in a state prison prior to receiving his federal sentence, that the Government violated the principles in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), by failing to specify a quantity of cocaine in his indictment and by failing to prove beyond a reasonable doubt the drug quantity used for his sentencing, and that his guilty plea was not voluntary because the quantity of cocaine was not specified in his indictment. We reject all of these arguments.

#### 1. Sentencing Credit

■ First, we conclude that the district court did not err in refusing to give Dowell credit for the time he had served in a state

---

**2.** After the district court reviewed the terms of the plea agreement with Smith in his plea hearing, the district court asked Smith if there were any more promises that had not been mentioned or discussed during the hear-

ing. Smith responded that he had not been given any further promises. J.A. at 101. As a general matter, the terms of a plea agreement consist of the terms revealed in open court. *Herrera,* 928 F.2d at 771.

prison prior to receiving his federal sentence. The Supreme Court has held that the Attorney General, through the Bureau of Prisons, and not the district court, is authorized to grant a defendant credit for time served prior to sentencing under 18 U.S.C. § 3585. *United States v. Wilson,* 503 U.S. 329, 335, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992). Although a prisoner may seek judicial review of the computation of this credit under 28 U.S.C. § 2241, he may do so only after he has sought administrative review and has exhausted all of his administrative remedies. *See Wilson,* 503 U.S. at 335, 112 S.Ct. 1351; *McClain v. Bureau of Prisons,* 9 F.3d 503, 505 (6th Cir.1993). In this case, Dowell has failed to show that he pursued and exhausted his administrative remedies with the Bureau of Prisons as required. Indeed, during oral argument. Dowell conceded that he has not yet exhausted his administrative remedies. Therefore, we have no authority to review Dowell's claim for sentencing credit.[3] *See Wilson,* 503 U.S. at 333, 112 S.Ct. 1351; *United States v. Westmoreland,* 974 F.2d 736, 737 (6th Cir.1992), *cert. denied,* 507 U.S. 1019, 113 S.Ct. 1818, 123 L.Ed.2d 448 (1993).

2. Challenges Under *Apprendi*

■ Second, we conclude that *Apprendi,* which stands for the proposition that factual determinations, other than a prior conviction, that increase a defendant's penalty beyond the statutory maximum sentence for the crime charged in the indictment must be proved beyond a reasonable doubt, is not implicated in this case. Our decision here is controlled by our recent decisions in *United States v. Harper,* 246 F.3d 520 (6th Cir.2001), and *United States v. Garcia,* 252 F.3d 838, (6th Cir.2001).

In *Harper,* we considered the application of *Apprendi* to a defendant who had stipulated to the amount of cocaine he was involved with in the charged drug conspiracy. *Harper,* 246 F.3d at 529. In light of the fact that the defendant was not contesting the drug quantity for which he was sentenced or his plea itself, we held that *Apprendi* was not implicated because the defendant had "stipulated to the amount of drugs for which he was held responsible, and the district court did not rely on any fact outside of the plea agreement to determine drug quantity at sentencing." *Id.* at 530–31, 120 S.Ct. 2348.

In *Garcia,* we considered a question very similar to that in *Harper.* In *Garcia,* the indictment did not allege a specific quantity of drugs but charged the defendant with conspiracy to possess "various quantities" of drugs. Despite the fact that the defendant admitted to only 1,000 kilograms or more of marijuana in the worksheets attached to his plea agreement, the district court found, by a preponderance of the evidence, that the defendant had participated in transporting 2,499 kilograms of marijuana and then sentenced the defendant accordingly. In reviewing the defendant's challenge to his sentence under *Apprendi,* we held that *Apprendi* had not been implicated, even though the defendant's "base offense level was for a quantity in excess of that to which [he] had explicitly admitted," because the defendant's sentence "did not exceed ... the statutory maximum penalty for the quantity that [the defendant] explicitly admitted." *Garcia,* 252 F.3d at 843.

■ In this case, Dowell, like the defendants in *Harper* and *Garcia,* was not given a sentence that exceeded the statutory

---

**3.** We note, however, that the Government concedes that Dowell's "attempt to raise this issue on direct appeal should not preclude him from filing a petition for writ of habeas corpus to obtain judicial review of any decision by the Bureau of Prisons if and when he exhausts his administrative remedies." Gov't Br. at 9.

maximum penalty for the quantity of cocaine he admitted to being involved with in the conspiracy, nor does he challenge the drug quantity for which he was sentenced. Consequently, under *Harper* and *Garcia,* we hold that his sentence does not violate *Apprendi.*

3. Voluntariness Of Plea Agreement

Finally, we conclude that Dowell's plea agreement was valid even though no cocaine amount was specified in his indictment. "A plea is valid if it is entered voluntarily and intelligently as determined under the totality of the circumstances." *United States v. Ormsby,* 252 F.3d 844, 845 (6th Cir.2001); *see also King v. Dutton,* 17 F.3d 151, 153 (6th Cir.1994). "[F]or a defendant's plea of guilty to be voluntary, the defendant must be aware of the maximum sentence that could be imposed." *King,* 17 F.3d at 154.

In this case, although Dowell's indictment did not identify a specific amount of cocaine, there is no question that Dowell had notice of the maximum sentence he faced for the charged conduct. Section 841(b)(1)(C) provides for a maximum sentence of twenty years for any defendant who is convicted of an offense involving any quantity of cocaine. Thus, from the outset, Dowell had adequate notice that he faced up to twenty years' imprisonment for the conspiracy charges in his indictment. Under these circumstances, we are not persuaded that Dowell's guilty plea was involuntary, and we affirm the district court's judgment against Dowell.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment against Dowell and Smith.