**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Oral MENDEZ, Defendant–Appellant.**

No. 00–1259.

United States Court of Appeals,
Sixth Circuit.

Oct. 18, 2001.

Before KEITH, SUHRHEINRICH, and CLAY, Circuit Judges.

CLAY, Circuit Judge.

Defendant, Oral Mendez, appeals from the judgment of conviction and sentence entered by the district court on March 8, 2000, following Defendant's guilty plea conviction for one count of conspiracy to import cocaine and marijuana in violation of 21 U.S.C. § 952(a). For the reasons set forth below, we AFFIRM Defendant's conviction and sentence.

## BACKGROUND

Defendant was charged in a two-count superseding indictment filed on March 25,

1999, with conspiracy to distribute cocaine, cocaine base ("crack"), and marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B), in Count I; and with conspiracy to import 500 grams or more of cocaine and a quantity of marijuana into the United States from Jamaica and Panama, in violation of 21 U.S.C. § 952(a) and 960(b)(2)(B), in Count II. (J.A. at 13–17.) Defendant pleaded guilty to Count II of the second superseding indictment pursuant to a plea agreement with the government.

Defendant failed to appear for sentencing on November 22, 1999, and a warrant was issued for his arrest. Defendant was apprehended and appeared for sentencing on March 6, 2000. Defendant's guideline range was calculated at 324 to 405 months' imprisonment, and the court imposed sentence at the low end of the guidelines range at 324 months' imprisonment. This timely appeal ensued, wherein Defendant raises two allegations of error: 1) the district court abused its discretion in denying his motion to withdraw his guilty plea; and 2) Defendant claims a violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

## DISCUSSION

### I. Denial of Motion to Withdraw Guilty Plea

■ Defendant first argues that the district court erred in denying his motion to withdraw his guilty plea. We review a district court's denial of a motion to withdraw a guilty plea for an abuse of discretion. *See United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir.1996) (citing *United States v. Alexander*, 948 F.2d 1002, 1003 (6th Cir.1991)).

Federal Rule of Criminal Procedure 32(e) provides that "[i]f a motion to withdraw a plea of guilty ... is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant

shows any fair and just reason...." Fed. R.Crim.P. 32(e). This Court has found that "the aim of the rule is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir.1991) (internal quotation marks and citation omitted).

■ The defendant bears the burden of demonstrating to the court a fair and just reason exists to grant his motion. *See Bazzi*, 94 F.3d at 1027 (citing *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir.1987)). In determining whether a defendant has shown a fair and just reason for purposes of withdrawing his plea, this Court considers various factors including:

(1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Bazzi*, 94 F.3d at 1027. "The factors listed are a general, non-exclusive list and no one factor is controlling." *Id.*

■ At Defendant's plea hearing held on July 21, 1999, Defendant admitted his involvement in the conspiracy to import cocaine and marijuana into the United States from Jamaica and Panama, as alleged in Count II of the second supersed-

ing indictment. Specifically, the following colloquy occurred between Defendant and the magistrate judge:

THE COURT: All right. Furthermore, even though somebody may predict to you what the sentence will be— and that's perfectly appropriate for somebody to make a prediction—Judge McKeague, I presume has not heard any such predicition and if he had heard them he wouldn't be bound by them, and he's the one that has to make the final decision.

You understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Is it fair to say then that your desire to plead guilty is you own free will act as far as you're concerned?

THE DEFENDANT: Yes, sir.

THE COURT: All right. In that case I'd like you to look at the charge, Count 2 of the Second Superseding Indictment, and tell me what you did in your own words that makes you guilty of this offense?

THE DEFENDANT: I was involved in transporting marijuana and cocain to America from Jamaica and Panama.

THE COURT: From Jamaica what?

THE DEFENDANT: From Jamaica and Panama.

THE COURT: And Panama?

THE DEFENDANT: Yeah.

THE COURT: And where was it transported to in the United States?

THE DEFENDANT: Michigan and Chicago and Miami.

THE COURT: And where in Michigan?

THE DEFENDANT: Kalamazoo.

THE COURT: You did this in cooperation with other people?

THE DEFENDANT: Yes, your Honor.

THE COURT: Would you agree with these dates that this conspiracy started sometime in 1993 and lasted until about July of 1997.

THE DEFENDANT: Yes, your Honor.

THE COURT: It also states that it was the purpose of this conspiracy or agreement to import cocaine and marijuana, *to import in excess of or 500 grams or more of cocaine as well as a quantity of marijuana. Would you agree with that?*

THE DEFENDANT: *Yes, your Honor.*

THE COURT: How much did you actually import; do you know?

THE DEFENDANT: No, I don't have no idea.

THE COURT: But at least that amount?

THE DEFENDANT: Yes, your Honor.

\* \* \* \* \* \*

THE COURT: Did you also use aerosol canisters to hide cocaine?

THE DEFENDANT: Yes, your Honor.

THE COURT: Whose idea was that?

THE DEFENDANT: Not mine.

THE COURT: This was done in Panama; is that right?

THE DEFENDANT: Yes, your Honor.

(J.A. at 44–46, 47 (emphasis added).) The magistrate then advised Defendant that he would issue a report and recommendation to the district court, recommending that the court accept Defendant's guilty plea; Defendant was also advised that he would have ten days from the time of issuance to file any objections that he had to report and recommendation. The magistrate issued the report recommending that Defen-

dant's guilty plea be accepted, and Defendant did not file any objections to the report and recommendation.

However, at sentencing on March 6, 2000, Defendant attempted to withdraw "a portion" of his plea. (J.A. at 53.) The following exchange took place between the sentencing court and defense counsel:

THE COURT: The presentence report will be made part of the record. The clerk is ordered to place the report under seal. If an appeal is taken, counsel on appeal will be permitted access to all parts of the report except for the probation officer's rationale.

The plea in this case was taken by Magistrate Judge Brenneman on July 21, 1999. Magistrate Judge Brenneman filed a Report and Recommendation on the same date recommending that the court accept the defendant's plea of guilty to Count 2 of the Second Superseding Indictment. Are there any reasons why the court should not accept the defendant's plea at this time, Ms. Tanase?

MS. TANASE (the prosecutor): Not on behalf of the government, Your Honor.

MR. CANADY (defense counsel): Yes, just a portion of that, Your Honor. If I might approach the podium.

Mr. Mendez has advised me that the second portion of that plea was not accurate concerning the importation of cocaine from Panama. He indicates that the first portion involving his activities concerning importation from Jamaica was accurate -

THE COURT: I'm not sure that I understand what you mean when you say "first portion" and "second portion."

MR. CANADY: Okay. I guess that in the indictment there were several paragraphs on Count 2, and so particularly we are talking about Count 5—I mean

paragraph 5 of Count 2 of the indictment.

THE COURT: Count 2 charges the defendant with importing cocaine and marijuana from both Jamaica and Panama.

\* \* \* \* \* \*

MR. CANADY: In the plea agreement and plea hearing he did indicate that he was involved in that [transporting marijuana and cocaine from Panama]. He now has advised me that he was not involved in any Panama importation.

\* \* \* \* \* \*

THE COURT: I'm going to construe Mr. Mendez's position as a request to withdraw his guilty plea because he no contends that he was involved with the importation of cocaine and marijuana only from Jamaica and not from Panama. While I do not have the five or six factors the court is required to consider in connection with a request to withdraw a plea directly in front of me, it is clear to this court that the request is not timely in the sense that the court is required to address the time period from the entry of the plea to the time that a request to withdraw the plea has been made. This plea agreement having been entered into in March of 1999, almost one year has gone by since the time the plea agreement was signed during which Mr. Mendez did nothing to attempt to change the record with respect to the extent of his involvement.

The court further finds that this change of position at this time would, in fact, prejudice the government, particularly given here these charges involving importation from other countries. Most importantly, however, the court notes that there is no assertion of actual innocence, the defendant admitting and con-

tinuing to admit that the smuggled cocaine and marijuana into this country from Jamaica.

Accordingly, any issue with respect to the amount of cocaine and marijuana can and will be taken up at a later part of these proceedings here this morning.

(J.A. at 53–57.)

The above quoted colloquies indicate that the district court did not abuse its discretion in denying Defendant's motion to withdraw his guilty plea. First, as found by the district court, several months had passed from time Defendant's plea was accepted and the time of sentencing when he moved to withdraw the plea. Specifically, Defendant's plea was accepted in July of 1999, and he attempted to withdraw the plea on March 6, 2000, thereby waiting more than 200 days before attempting to withdraw. In *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987), this Court found that "[t]he shorter the delay, the more likely a motion to withdraw will be granted, and a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time." The *Triplett* court found that the eighty-four day delay did not indicate that the defendant had a "swift change of heart," and therefore failed to indicate a "fair and just reason" for granting the motion to withdraw. *See id.* at 1198. Similarly, this Court had found delays of a much shorter duration to be insufficient to justify granting motion to withdraw a plea. *See United States v. Durham*, 178 F.3d 796, 799 (6th Cir.1999) (finding delay of seventy-seven days too long to justify withdrawal of plea); *United States v. Baez*, 87 F.3d 805, 807 (6th Cir.1996) (calling a sixty-seven delay the strongest factor supporting the court's denial of the motion to withdraw); *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir.1991) (finding the defendant's "delay of almost five months [to be] certainly beyond the

bounds of the time frame ordinarily considered appropriate for motions to vacate"); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir.1988) (terming a fifty-five day gap a "lengthy delay").

Accordingly, Defendant's delay of over 200 days in the matter at hand was "beyond the bonds of the time frame" considered for granting a motion to withdraw the plea. *See Alexander*, 948 F.2d at 1004. We are unpersuaded by Defendant's argument as to why he waited so long to withdraw his plea; that is, Defendant claims that because he was "out of the jurisdiction" he was unable to withdraw the plea timely. However, the reason that Defendant was "out of the jurisdiction" was because he chose to become a fugitive and flee to Georgia—where he assumed an alias as well as his prior drug activity for which he was arrested and transferred back to Michigan—instead of appearing for sentencing as ordered.

In addition, as found by the district court, although Defendant was asserting his innocence with respect to the transporting marijuana and cocaine from Panama at sentencing, Defendant had not maintained his innocence as to this criminal conduct throughout. In fact, at his plea hearing, Defendant admitted to transporting these drugs from Panama and provided details as to how it was accomplished. Therefore this factor also weighs against Defendant. *See Bazzi*, 94 F.3d at 1027. Finally, at sentencing Defendant expressed to the district court that the reason he fled to Georgia was because he was unhappy with the calculated sentencing range in his presentence investigation report. Thus, it appears that Defendant's motivation in withdrawing his plea was to lessen his sentencing range by only admitting to narcotics involvement with Jamaica, such that the circumstances surrounding his plea, and subsequent attempt to with-

**400**

draw the plea, appear suspect leading to the conclusion that this factor also cuts against Defendant. *See id.* For these reasons, we conclude that the district court did not abuse its discretion in denying Defendant's motion to withdraw his guilty plea.

## II. Alleged Violation of *Apprendi v. New Jersey*

 Defendant next argues that the district court violated the commands of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *See* 120 S.Ct. at 2362–63, 120 S.Ct. 2348.

The sentencing provisions of 21 U.S.C. § 952(a), the section to which Defendant pleaded guilty, are found in 21 U.S.C. § 960(b). The second superseding indictment alleged that § 960(b)(2)(B) applied here inasmuch as Defendant allegedly "import[ed] into the United States from Jamaica and Panama 500 grams or more of cocaine and a quantity of marijuana ...." Section 960(b)(2)(B) provides that for 500 grams or more of cocaine, the sentence shall range from "not less than 5 years and not more than 40 years" of imprisonment. *See* U.S.C. § 960(b)(2)(B). Because Defendant pleaded guilty to the importation of at least 500 grams of cocaine, and because his sentence did not exceed the statutory maximum of 40 years' imprisonment under § 960(b)(2)(B), no *Apprendi* violation has occurred in this case. *See United States v. Harper*, 246 F.3d 520, 530 (6th Cir.2001).

In *Harper*, this Court held that where the defendant "stipulated that he was responsible for slightly more than 500 kilograms of marijuana and pleaded guilty, pursuant to that amount, to a count which carried a mandatory minimum sentence of ten years with a possible sentence of life imprisonment," the defendant's sentence of 168 months, or 14 years, was not in excess of the statutory maximum and his *Apprendi* claim failed. *See Harper*, 246 F.3d at 530. The *Harper* court noted, however, that the defendant's *Apprendi* claim "would have had merit if the indictment failed to charge him with conspiracy to distribute a specific quantity of drugs; if he subsequently pleaded guilty without stipulating, either in a plea or a factual basis, to the amount of drugs for which he assumed responsibility; and if the district court had determined at sentencing, by a preponderance of the evidence, the amount of drugs attributable to [the defendant] which subjected him to an enhanced statutory sentence." *Id.*

As in *Harper*, Defendant in the matter at hand was sentenced based upon an amount of drugs named in his indictment, to which he stipulated at the plea hearing and to which he agreed in his plea agreement; therefore, no *Apprendi* violation occurred. And, as in *Harper*, had these circumstances been different, Defendant's *Apprendi* claim may have had merit, but the circumstances enunciated by the *Harper* court which would have made Defendant's *Apprendi* claim viable are not present here. *See Harper*, 246 F.3d at 530.

## CONCLUSION

Defendant's judgment of conviction and sentence is therefore AFFIRMED.